In the Matter of Proving the Will of MABEL P. DAGGETT, Deceased.

JOHN D. DAGGETT, Appellant; CHATHAM PHENIX NATIONAL BANK AND TRUST COMPANY, as Executor, Respondent.

244

. (Argued November 17, 1930; decided January 6, 1931.)

*Henry Hirschberg* for appellant. The domicile of testatrix was the county of Orange at the time of her death, being the conceded domicile and residence of her husband and no adequate reason for a separate domicile on her part being established. (*Hunt* v. *Hunt,* 72 N. Y. 217; *Hammond* v. *Hammond,* 103 App. Div. 437; *Harris* v. *Harris,* 83 App. Div. 123; *Matter of Green,* 99 Misc. Rep. 582; 179 App. Div. 890; *Barber* v. *Barber,* 89 Misc. Rep. 519; *Matter of Bushbey,* 59 Misc. Rep. 317; *Jones* v. *Jones,* 8 Misc. Rep. 660; *McGowan* v. *McGowan,* 18 Misc. Rep. 708; 164 N. Y. 558; *Atherton* v. *Atherton,* 181 U. S. 155; *Haddock* v. *Haddock,* 201 U. S. 562; *Post* v. *Post,* 71 Misc. Rep. 44; 210 N. Y. 607; *Wacker* v. *Wacker,* 154 App. Div. 495; *Callahan* v. *Callahan,* 65 Misc. Rep. 172; *Matter of Florence,* 54 Hun, 328; *Matter of Thorne,* 240 N. Y. 444; *Shute* v. *Sargent,* 67 N. H. 305; *Matter of Newcomb,* 192 N. Y. 238; *Flatauer* v. *Loser,* 156 App. Div. 591; *Bolton* v. *Schriever,* 135 N. Y. 65; *Matter of Green,* 186 App. Div. 903.)

*Cornell S. Dikeman* and *Milton Kunen* for respondent. It was within testatrix's power to acquire a domicile in New York city. (*Matter of Florence,* 54 Hun, 328; *Matter of Walker,* 54 Misc. Rep. 177; *Matter of Crosby,* 85 Misc. Rep. 679; *Matter of Thorne,* 240 N. Y. 444; *Shute* v. *Sargent,* 67 N. H. 305; *Matter of Brown,* 133 Misc.

Rep. 457; *Flatauer* v. *Loser,* 156 App. Div. 591; *Bolton* v. *Schriever,* 135 N. Y. 65.)

POUND, J.   The question is whether the Surrogate's Court of New York county or the Surrogate's Court of Orange county has exclusive jurisdiction of proceedings to probate the will of Mabel Potter Daggett, deceased. (Surrogate's Court Act, § 45, subd. 1.)   Of which county was testatrix a resident at the time of her death?   It has been held that she was a resident of New York county.

The executor named in the will, Chatham Phenix National Bank and Trust Company, alleges in its petition that Mrs. Daggett was a resident of New York county. She so describes herself in the will and elsewhere.   Her husband, John D. Daggett, contesting probate in New York county, alleges that she resided in Orange county where he resides and the petition for probate alleges that he resides.   The singular anomaly is presented of husband and wife living together in perfect harmony coupled with a decision that they may have separate residences for the purpose of probate jurisdiction.   The permanent family home at the time of the wife's death was in Orange county. Of that there can be no doubt.   The home belonged to the wife; the husband lived in his wife's home.   She was a writer and seems to have been a person of independent means.   She, in fact, determined substantially all questions of the movements of herself and her husband. Sometimes they were abroad and sometimes in New York, as her pleasure or business dictated.   She took him with her from place to place but they always came back to the Orange county home.

The word " residence," while it may not be for all purposes of probate synonymous with " domicile " (*Matter of Newcomb,* 192 N. Y. 238, 250), is identical in meaning so far as the question arising in this case is concerned.   (*Kennedy* v. *Ryall,* 67 N. Y. 379, 386.)

If Mrs. Daggett had been a single woman, she would have been free to select her own residence or domicile without let or hindrance; to elect between her country home and the city with no better reason than her desire to have her will proved and her estate settled in one county rather than another (*Matter of Newcomb, supra*), but she was a married woman and a married woman cannot, to suit her convenience or pleasure merely, create a legal residence for herself apart from that of her husband.

A woman upon marriage takes the domicile of her husband by operation of law and the legal domicile of the wife is *prima facie* that of her husband. (*Hunt* v. *Hunt,* 72 N. Y. 217, 242.) This rule, no doubt, is a creation and a survival of the theory of the common law that her very being was merged in that of her husband. (*Williamson* v. *Osenton,* 232 U. S. 619.) Modern statutes have done much to give married women a legal status apart from their husbands but the wife is still the subordinate in many ways. (*Allen* v. *Allen,* 246 N. Y. 571.) Unity of person no longer exists but the husband is still the head of the family, the bread-winner in theory and duty if not in fact. He selects the place of abode of the family and it is the duty of the wife to abide by his decision unless it is unsafe or imprudent for her to do so. (*Powell* v. *Powell,* 29 Vt. 148, 150.) If, in fact, as in this case, the husband chooses to live with the wife in her home, her status remains unchanged. It is his choice that governs, not hers, until he forfeits it. If Mr. Daggett had elected to leave the Orange county home he might have taken his wife with him to his new domicile. Even her physical presence would not be required to effect the change. Her domicile or residence would follow his. (*Hunt* v. *Hunt, supra.*) Otherwise she might choose her domicile in New York while he elected to reside in Orange county. We sometimes hear of amicable married couples living apart by consent (*Matter of Florance,* 54 Hun, 328; *Matter*

*of Crosby*, 85 Misc. Rep. 679), but that is not the case we have before us. (*Dean* v. *Dean*, 241 N. Y. 240, 244.)

Mr. Daggett says he resided in Orange county in his wife's home at the time of her death. Indubitably such was the fact. He says he made it his domicile. Neither had any other fixed place of abode. They stopped in New York transiently in hotels. She went to New York for hospital care before she died. In no way did he indicate any acquiescence in her desire that New York should be their place of abode, their residence, their domicile, for any purpose.

As was said in *Matter of Thorne* (240 N. Y. 444), "the identity of person of husband and wife is no longer a fetish of the law." The rule that a married woman's domicile is always that of her husband has been greatly modified in this country. She may, when justified by her husband's conduct toward her in leaving him, make her home apart from him to establish a domicile to sue for divorce and perhaps for all purposes. (*Williamson* v. *Osenton*, *supra*; *Dean* v. *Dean*, *supra*.) We are asked to add another exception to the general rule to include the independent right of domicile of the married woman who is the actual if not the titular head of the family. But it has never been held that a married woman of means may establish a separate domicile by doing those things which would establish a domicile for her husband. Married women have, very properly, a wealth of freedom as compared to that granted to them by the common law, but they may not in this State, until the Legislature acts, sue their husbands for damages for personal injuries (*Allen* v. *Allen*, *supra*), nor acquire a separate domicile whenever they so elect when they have no justification or excuse for leaving their husbands. While it has been aptly suggested, in a matrimonial case and as mere dictum, that "no reason would seem to remain why she may not acquire a separate domicile for every purpose known to the law" (*Shute* v. *Sargent*, 67

N. H. 305), and while this argument may seem particularly applicable when the wife so acts for the purpose of voting or for having her will probated, we must await the enact-ment of legislation before we can say that no disabilities on account of sex and marriage shall be recognized by the courts.

The orders should be reversed and the proceedings dismissed, with costs in all courts payable out of the estate.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.