Eugene A. Perkins, Respondent, *v.* Guaranty Trust Company of New York, Defendant, and Idonah S. Perkins, Appellant.

Argued January 14, 1937; decided May 25, 1937.

254

*Milton R. Weinberger, William Klein, Jerome Weinstein* and *Adolph Lund* for appellant. The courts below erred in finding that the denial by the Philippine court to vacate the consent judgment was *res adjudicata.* (*Everett* v. *Everett,* 180 N. Y. 452; *Blank* v. *Blank,* 107 N. Y. 91; *Beards* v. *Wheeler,* 76 N. Y. 213; *Foote* v. *Lathrop,* 41 N. Y. 358; *Dutton* v. *Smith,* 10 App. Div. 566.) The court below erred in its refusal to find that respondent at all times has been a citizen of the United States and State of New York and that appellant, always

a citizen of the United States, through her marriage to respondent, became a citizen of New York. (*Matter of Daggett*, 255 N. Y. 243; *Matter of Newcomb*, 192 N. Y. 238; *Matter of Lydig*, 191 App. Div. 117; *Matter of Johnson*, 39 Phil. 156; *Templeton* v. *Babcock*, 52 Phil. 130; *Quintana* v. *Lerma*, 24 Phil. 285; *Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290; *Adler* v. *Zimmerman*, 233 N. Y. 431.) The court below erred in finding that the rights of the wife with respect to marital property must be determined under the laws of the Philippine Islands and not the laws of the State of New York. (*People* v. *Daiboch*, 265 N. Y. 125; *Matter of Johnson*, 39 Phil. 156; *Templeton* v. *Babcock*, 52 Phil. 130; *Miciano* v. *Brimo*, 50 Phil. 867.) Under the laws of the State of New York the appellant is entitled to her own separate property. (*Weigert* v. *Schlesinger*, 150 App. Div. 765; *Shapiro* v. *Shapiro*, 208 App. Div. 325; *Whiton* v. *Snyder*, 88 N. Y. 299; *Magdeburg* v. *Dry Dock Sav. Inst.*, 147 App. Div. 652; 205 N. Y. 544; *Melton* v. *Divine*, 20 Barb. 9; *Peters* v. *Fowler*, 41 Barb. 467.) The consent to the entry of the judgment of August 4, 1930, and the assignment by appellant of the shares of stock was executed under a mistake as to her rights of ownership. Respondent deliberately took advantage of her ignorance instead of informing her that her rights were governed by New York law, which constituted fraud, or if he was not aware of such rights, he shared the mistake with her. He obtained the shares without consideration, either through mistake, fraud or unfair dealings. (*Boyd* v. *De La Montagnie*, 73 N. Y. 498; *Haack* v. *Weicken*, 118 N. Y. 67; *Matter of Smith*, 243 App. Div. 348.)

*Martin Taylor, Henry A. Stickney* and *Otto Schoenrich* for respondent. No fraud was practiced on the appellant in the Philippine litigation and the judgment was not the result of any mistake. (*Guinguing* v. *Abuton*, 48 Phil. 144.) The Philippine law as to conjugal property governed the rights of the parties. (*Slaughter-House Cases*, 83 U. S.

36; *Prentiss* v. *Brennan*, 19 Fed. Cas. No. 11,385; *Hough* v. *Société Electrique Westinghouse de Russie*, 231 Fed. Rep. 341; *Hepburn & Dundas* v. *Ellzey*, 4 U. S. 444; *Templeton* v. *Babcock*, 52 Phil. 130; *Matter of Chadwick*, 109 Misc. Rep. 696.) The New York State law requires the application of the Philippine law relating to community property. (*Matter of Slade*, 154 Misc. Rep. 275; *Hough* v. *Société Electrique Westinghouse de Russie*, 231 Fed. Rep. 341; *Hammerstein* v. *Lyne*, 200 Fed. Rep. 165; *Matter of James*, 172 App. Div. 800; *Matter of Chadwick*, 109 Misc. Rep. 696; *Matter of Hernandez*, 172 App. Div. 467; 219 N. Y. 566.)

RIPPEY, J. The issue involves title to and ownership and/or management and control of 24,000 shares of the capital stock of the Benguet Consolidated Mining Company said to be worth more than a quarter of a million dollars. The character, quality and extent of the ownership of, control over, and right to possession of the certificates representing the stock depends upon whether the laws of the Philippine Islands or the laws of the State of New York govern the property rights of Perkins and his wife, and attention first must be addressed to a solution of that question.

Defendant Idonah Slade Perkins was born in Big Prairie, Mich., December 14, 1886. Later she lived for a time in Spokane, State of Washington, and from there went to the Philippines in 1913. Plaintiff was born in 1886 a citizen of the United States. His actual residence until after he was twenty-two years of age and his domicile from birth was in Brooklyn, N. Y. He was admitted to the practice of law in New York State in the year 1908 and then asserted under oath, as the law required (Code Civ. Proc. § 56), that he was a citizen and resident of the State of New York. Prior to 1914 he went to Manila, P. I., and since arrival there has been engaged in the practice of law in the Philippines.

Perkins and his wife were married at Manila on January 3, 1914, by the pastor of the Central Methodist Episcopal Church. The marriage was not authorized by nor contracted under the provisions of the Spanish Marriage Law of 1870 or under the provisions of the Civil Code of Spain, but rather pursuant to the authority conferred by the provisions of section 5 of General Order No. 68 of the United States Military Occupation, as amended, and was valid both in the Philippines ( *United States* v. *Macleod,* 3 Phil. 510, 513) and in the United States and the State of New York (*Van Voorhis* v. *Brininall,* 86 N. Y. 18; *Thorp* v. *Thorp,* 90 N. Y. 602). Perkins and his wife have been living apart since 1930, but there has been no decree of separation or divorce.

Change of the status of either as a citizen of the United States could be effected only by naturalization under the naturalization laws of the Philippine Islands enacted on March 26, 1920, pursuant to authority conferred upon the Philippine Legislature by an act of the Congress of the United States of August 29, 1916, embodying similar provisions of previous acts. (39 U. S. Stat. 546; U. S. Code, tit. 48, § 1002; *United States* v. *Wong Kim Ark,* 169 U. S. 649; *Roa* v. *Collector of Customs,* 23 Phil. 315, 330; *Go Julian* v. *Government of Philippine Islands,* 45 Phil. 289.) Neither party has performed any act of renunciation of American citizenship or taken any steps to acquire Philippine citizenship but, on the contrary, each party has persistently asserted American citizenship at all times. Mere residence in the Philippines, no matter how long continued, cannot affect their status as citizens of the United States or plaintiff's status as a citizen of the State of New York. (*Matter of Johnson,* 39 Phil. 156; *Templeton* v. *Babcock,* 52 Phil. 130.)

The principle of nationality governed the civil rights of residents of the Philippine Islands. Article 10 of the Civil Code of Spain (extended to the Philippines by royal decree in July, 1889), so far as not repealed or inoperative because of change of sovereignty, reads as follows:

" Art. 10. Personal property is subject to the laws of the nation of the owner thereof; real property to the laws of the country in which it is situated.

" Nevertheless, legal and testamentary successions, in respect to the order of succession as well as to the amount of the successional rights and the intrinsic validity of their provisions, shall be regulated by the national law of the person whose succession is in question, whatever may be the nature of the property or the country in which it may be situated."

The words " residence " and " domicile " when used in a statute may have an identical or a variable meaning depending " upon the nature of the subject-matter of the statute as well as the context in which the words are used." (*Rawstorne* v. *Maguire*, 265 N. Y. 204, 208.) Likewise, " nationality," " citizenship " and " domicile " may have an identical meaning and be exclusive of " residence," and the expression " laws of the nation of the owner " as used in article 10 of the Civil Code refers to and embraces the nationality of the owner and has been so construed by the highest court of the Philippine Islands. (*Matter of Johnson, supra; Templeton* v. *Babcock, supra.*) In the *Johnson* case, Johnson was a native of Sweden who was a naturalized citizen of the United States and domiciled in the State of Illinois and thereafter moved to and died in the Philippines. It was held that the laws of Illinois governed the execution of his will and the devolution of his property under article 10 of the Civil Code. Decision was rendered prior to the naturalization law of 1920. At page 171 of the opinion the court says: " There is no law in force by virtue of which any person of foreign nativity can become a naturalized citizen of the Philippine Islands; and it was, therefore, impossible for the testator, even if he had so desired, to expatriate himself from the United States and change his political status from a citizen of the United States to a citizen of these Islands. This being true, it is to be presumed that he retained his

citizenship in the State of Illinois along with his status as a citizen of the United States. It would be novel doctrine to Americans living in the Philippine Islands to be told that by living here they lose their citizenship in the State of their naturalization or nativity."

When applied to the facts in this case, the American nationality of Perkins was combined with American domicile and embraced his New York State citizenship and domicile and the "laws of the nation" means the laws of New York State. It was the domicile of origin which is conclusively presumed to continue as no change was alleged or proved (*Dupuy* v. *Wurtz*, 53 N. Y. 556; *Mitchell* v. *United States*, 21 Wall. [U. S.] 350) and the subsequent permanent and continuous domicile of selection as indicated by the uncontradicted documentary evidence in the case. Among this is Perkins' declaration in his will made August 23, 1928, where he says he is " a citizen of the United States and of the State of New York, and at present residing in the City of Manila, Philippine Islands," and his recital in the agreement of separation between himself and wife of July 1, 1930, prepared by him but unexecuted, "the Husband and the Wife, citizens of the United States, the Husband a citizen of the State of New York, (which citizenship they have never renounced and with respect to which they now contract)." Furthermore, his legal domicile was assigned to him by law. (American Law Institute, Restatement of the Law of Conflict of Laws [1934], § 9.)

The trial court held as a matter of law that article 10 of the Civil Code had no application to the property rights of the parties in the case at bar. On the contrary, it specifically defines the law that governs property rights of citizens of the United States residing in the Philippines while living and rights of succession by death. (*Matter of Johnson, supra; Templeton* v. *Babcock, supra; Aldecoa* v. *Hong Kong & Shanghai Banking Corp.*, 30 Phil. 255; *Miciano* v. *Brimo*, 50 Phil. 867; Sanchez Roman, Studies of the Civil Law [2d ed. 1911], vol. 2,

pp. 322, 346; Scaevola, Annotations to the Civil Code [5th ed. 1912], vol. 1, p. 250; Albucilla, Dictionary of Spanish Administration [6th ed. 1917], vol. 5, p. 676.)

The Benguet Consolidated Mining Company is a corporation organized under the laws of the Philippine Islands. 15,888 shares of the stock in question were acquired by Idonah Slade Perkins by purchase out of her own separate moneys at a cost of $11,500 at various times and in varying amounts between August 16, 1916, and June 11, 1927. 224 shares were a Christmas present to her from her husband on December 26, 1923. On October 18, 1923, 7,888 shares were issued to her as a stock dividend. The entire 24,000 shares stood in her name upon the books of the corporation down to April 11, 1934. Certificates for the stock were issued in her name and have been in her possession at all times save only as they have been on deposit with the trust company. Possession of the certificates in her name carries with it the presumption of ownership. (*Whiton* v. *Snyder*, 88 N. Y. 299.) Perkins made a motion in action No. 37517 (later referred to) for an order requiring the mining company to cancel the certificates which were issued to his wife and to issue new certificates in their place. The order was granted on April 5, 1934, notwithstanding the protest of the mining company that the court was without jurisdiction to grant the order. No notice was given to Mrs. Perkins of that proceeding nor did she appear. The court was without jurisdiction to make the order and it was void and of no effect and in no manner affected her legal rights in the stock. (*Matter of Coates*, 75 App. Div. 469.) Shortly thereafter new certificates were issued to Perkins pursuant to the order of the court.

The law of domicile prevails in the United States as to civil rights. The condition and nationality of Mrs. Perkins followed that of her husband (U. S. Rev. Stat. [1874], § 1994 [repealed by § 6 of act of Congress of Sept. 22, 1922; U. S. Code, tit. 8, § 10, without affecting citizenship obtained thereunder]; U. S. Code, tit. 8, § 10;

Civil Code of Spain, art. 22), and, upon marriage, she took his domicile by operation of law (*Matter of Daggett*, 255 N. Y. 243, 246). If follows that the stock was not property of the conjugal partnership to be possessed and administered by the plaintiff under the laws of the Philippine Islands, as found by the trial court. Rather, the law applicable to the property rights in the stock is the law of the State of New York. Here, the stock was her separate property. (Domestic Relations Law [Cons. Laws, ch. 14], §§ 50, 51; *Whiton* v. *Snyder, supra; Magdeburg* v. *Dry Dock Savings Institution*, 147 App. Div. 652; app. dism., 205 N. Y. 544.)

But plaintiff contends and the lower courts have found and concluded that all questions as to title, ownership and right to possession of the stock and certificates are *res adjudicata* here by virtue of proceedings in the Philippine courts in which both plaintiff and his wife were parties. That position cannot be maintained.

On or about June 30, 1930, Idonah Slade Perkins commenced an action in the Court of First Instance in Manila (Case No. 37517) against her husband *for a separation* and, as incidental relief in the event a separation were granted, she asked that the court decide concerning the property rights of herself and her husband in accordance with the provisions of the Civil Code. She then believed that the civil law in force in the Philippine Islands governed the property rights of herself and husband rather than the New York State law. In her complaint she alleged that various properties, including the stock in question, constituted " conjugal property of the conjugal partnership." The relief she might have procured under the Philippine law, according to circumstances, if successful in the separation action, was an allowance for support and maintenance payable by her husband out of his own property or out of the conjugal property before division or out of his share of the conjugal property. Her assertion that the stock in question was conjugal property to be held and admin-

istered under the provisions of the Civil Code was based upon misapprehension and upon erroneous advice by her husband as to the applicable law. Even though such advice had been honestly given, under the provisions of sections 333 and 334 of the Code of Civil Procedure, the law of the forum, as well as under the law of the State of New York, it constituted constructive fraud as a matter of law. (*Boyd* v. *De La Montagnie*, 73 N. Y. 498.) Perkins filed an answer raising the general issue and embodied in it a cross-complaint. In the cross-complaint he alleged that he was entitled by virtue of the conjugal partnership to the possession and administration of all of the property of himself and wife and demanded that such property in her hands be turned over to him for that express purpose. He did not assert any claim or demand any adjudication that he had title to and was the sole owner of the property in question. On July 25, 1930, Mrs. Perkins signed a *petition*, prepared and submitted to her by the plaintiff, after he had required her to discharge the attorney who was representing her in that action and had forbidden her legal advice, whereby she asked to be permitted to withdraw her complaint and that judgment be entered in his favor upon his cross-complaint. This paper, as well as other papers which she then signed, was executed and delivered upon the express representation by the plaintiff that doing so would take her out of court, as shown by the uncontradicted evidence of a number of disinterested witnesses. Notwithstanding the representation, Perkins forthwith proceeded to file the consent in the Philippine court and the court thereupon and on August 4, 1930, entered a decree by which her petition was granted and Perkins was awarded possession of the certificates and the right to administer the stock in question and Mrs. Perkins was directed to deliver the certificates to him. The certificates were then outside the jurisdiction of the court. Relying upon the condition on which the papers were signed and believing that the

provisions of the Philippine law as to conjugal property rights controlled and that by signing them all court proceedings would be ended, she filed no reply to the cross-complaint and failed to appear and was not represented in court. She took no appeal. An appeal would not lie from the consent judgment.

By the filing of the complaint and answer there can be no doubt but that the Philippine court had jurisdiction of the parties and of the issue tendered by the pleadings. Had that issue been left in the case, any judgment thereon, after hearing and determination on the merits, would be conclusive as to all matters actually in issue and actually litigated (*Kinnier* v. *Kinnier*, 45 N. Y. 535; *Culross* v. *Gibbons*, 130 N. Y. 447), except that it might be impeached in equity for fraud if against conscience to execute it, either in the Philippine courts (*Anuran* v. *Aquino & Ortiz*, 38 Phil. 29) or in the courts of the State of New York (*Kinnier* v. *Kinnier, supra; Arcuri* v. *Arcuri*, 265 N. Y. 358, 361). But neither plaintiff nor defendant presented to the Philippine court the issue involved here, namely, whether the property rights of the parties were governed by the laws of the State of New York or by the Civil Code of Spain, and no such issue was or could be litigated or determined upon the merits in the Philippine court. Plaintiff's consent was, in fact, a voluntary nonsuit as to her cause of action. The decree, in express terms, authorized her to withdraw her complaint. Thus there was removed from the consideration of the court any question of the legal rights of the parties in so far as they were raised by the complaint; the stipulation was that the claim of defendant to the right to possess and administer the property might be determined in his favor without litigation. The scope of the jurisdiction of the Philippine court was limited to the precise matters presented by the consent, and the judgment or order does not constitute an adjudication upon the questions involved in the case at bar and is no estoppel to its maintenance. (*Reynolds*

v. *Stockton*, 140 U. S. 254; *Webb* v. *Buckelew*, 82 N. Y. 555; *Bannon* v. *Bannon*, 270 N. Y. 484, 491.)

On September 16, 1930, Perkins filed a petition in the Court of First Instance of Manila to punish his wife for contempt of court for refusing to obey the aforesaid decree and to surrender possession of the mining company stock in accordance therewith. Thereupon Mrs. Perkins procured counsel and was advised as to her rights in the stock in question. She filed an answer wherein she questioned the correctness of the judgment on the merits, stated in detail the facts upon which she alleged that the consent to the entry of the decree had been procured from her by fraud, duress and deceit, raised the question of the jurisdiction of the court to grant the judgment and asserted that she was the owner and entitled to possession of the stock and that title and right to possession of the stock must be determined according to the laws of the State of New York. On March 30, 1931, an order was made adjudging her in contempt and directing her imprisonment. The court refused to consider her defense in the contempt proceedings, saying, " If the plaintiff considered herself entitled to the exclusive ownership of some of the properties described by her in her complaint, she should have objected to and appealed from the judgment rendered in this case, which is now final due to the fact that the plaintiff allowed the legal period for the interposition of an appeal, to expire." From the order adjudging her in contempt, she appealed to the Supreme Court and the order was affirmed by a divided court, the minority taking the position that the lower court was without jurisdiction to enter a decree on the consent of the wife under the Philippine law and further that the wife had no power to consent to the entry of the decree and that when the lower court granted her petition to withdraw her complaint there was no issue before the court for trial. On May 5, 1933, Perkins made an *ex parte* application to commit his wife to prison, an order of commitment

was made by the court on May 10, 1933, and on the same day the Director of Prisons in Manila certified that he had taken her into custody. She filed a petition for discharge from custody and this petition was denied on May 15, 1933. She thereupon procured a writ of habeas corpus and was released on bail and before the decision of the court on the writ she departed for the United States.

While the contempt proceeding was pending and on January 15, 1931, Mrs. Perkins made a motion in the action No. 37517 to the Court of First Instance at Manila to vacate the judgment on the ground of fraud and mistake and excusable neglect under the provisions of section 113 of the Philippine Code of Civil Procedure, which reads as follows:

" Sec. 113. Relief from effect of judgments and orders. Upon such terms as may be just the court may relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect: Provided, That application therefor be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken."

She alleged that the judgment had been obtained as a result of her mistake, excusable neglect and inadvertence brought about by the fraud, deceit and duress of her husband and by his representations and by his false and fraudulent protestations of his desire to effect a reconciliation with her and to live with her again in their home as man and wife and as a result of her mistake as to her rights in the property in question and of the applicable law governing those rights and as a result of her mistaken belief, induced by her husband, that the stock was the property of the conjugal partnership under the laws of the Philippine Islands. She raised the question of the jurisdiction of the court to grant the decree and asserted that ownership and right to possession were to be determined by the laws of the State of New York. Perkins

appeared and answered and the court denied her motion solely upon the ground of laches in moving to vacate and not upon the merits, although she made her motion within the time prescribed. It was held and stated by the court that to go into the merits " would be the equivalent of depriving the courts of the discretion conferred upon them in the due exercise of that which is provided in section 113 of the Code of Civil Procedure." Upon appeal from the order denying this motion, the Supreme Court affirmed.

It is clear from the certified record of the proceedings in the Philippine courts upon both motions that the granting of plaintiff's motion to punish his wife for contempt rested solely upon the technical but erroneous ground that an appeal from the judgment of August 4, 1930, was available which was not taken and that the denial of the wife's motion to vacate that judgment under section 113 of the Philippine Code of Civil Procedure was solely on the ground of laches and in the exercise of discretion. Under such circumstances, the courts of New York are not concluded by the decisions of the Philippine courts (*Everett* v. *Everett*, 180 N. Y. 452; *Bannon* v. *Bannon*, 270 N. Y. 484, 491) for the purpose of the motion was to open the default and allow her to plead upon and litigate the merits. Neither decision was a bar to an action in equity in the Philippine Islands to set aside the decree for fraud (*Melgar & Noel* v. *Delgado & Alquizola*, 54 Phil. 668; *Anuran* v. *Aquino & Ortiz, supra*), nor does it bar such an action in the courts of New York State or estop Mrs. Perkins from questioning the validity of the judgment of August 4, 1930, on the merits on any ground available. (*Hunt* v. *Hunt*, 72 N. Y. 217, 225; *Foote* v. *Lathrop*, 41 N. Y. 358; *Everett* v. *Everett, supra.*)

At the time Mrs. Perkins executed the petition for permission to withdraw her complaint in action No. 37517 she also executed and delivered to her husband an assignment of the stock in question and he has had

possession of the assignment since. If the law of the place of its execution is to govern, it was void under articles 1334 and 1458 of the Civil Code, which have been construed to mean that any gratuitous transfer whereby a married woman purports to convey to her husband her entire interest in the conjugal estate is void. (*Uy Coque* v. *Sioca*, 45 Phil. 430, 440, 441.) By the provisions of section 334 of the Philippine Code of Civil Procedure, subdivision 2, it is presumed that the procuring of the assignment was with wrongful intent. If not rebutted, the presumption is absolute. (*United States* v. *Tria*, 17 Phil. 303.) If the validity of the assignment is to be determined by the laws of New York State, it is also void. It was not under seal and the trial court has found consideration to be lacking. Likewise, it was executed completely on the erroneous assumption that the stock was conjugal property upon the representations of her husband and in the belief, as the trial court found, that she had no independent title or ownership in the property and that her property rights were governed exclusively by the laws relating to partnership or conjugal property.

The uncontradicted testimony required the trial court to declare the assignment and the consent void and to hold that the judgment of the Philippine court was a nullity because of the fraud, imposition, duress and deceit practiced by Perkins on his wife. The findings of the trial court are to the effect that both Perkins and his wife believed that the Philippine law governed the property rights of husband and wife and that Perkins so advised his wife. At the time of the execution of the assignment and consent, Perkins had compelled his wife to discharge the attorney who had represented her in the action in which the decree of August 4, 1930, was entered, and had declined to permit her to consult with an attorney, although she had requested permission so to do. A number of legal documents, including the consent and the assignment,

were placed before her in the presence of several witnesses, some of whom declined upon her request to give her any advice and all of whom declared in affidavits used at the trial that Perkins then said to his wife that the signing of the papers would get her out of court. The evidence is uncontroverted that Perkins forthwith used the consent and other papers to bar Mrs. Perkins from her legal rights through court proceedings. The conclusion is inevitable that she executed the papers under mistake, misapprehension, duress and fraud. Because of the confidential relations existing between husband and wife and the high degree of honesty and fair dealing demanded of him and because of his knowledge and experience in the law, he was required to deal with her with frankness, fairness and complete honesty. Unfair dealing and over-reaching on his part in the matters in question constitute fraud and the burden was upon him to overcome the presumption. (*Boyd* v. *De La Montagnie, supra; Haack* v. *Weicken,* 118 N. Y. 67.) He has made no attempt whatever to meet this burden.

Finding of fact No. 6 to the effect and in so far as it purports to relate to the parties here " that the domestic relations and property relations between husband and wife in the Philippines are regulated by the provisions contained in Articles 1315 to 1444 inclusive of the Civil Code in force in the Philippine Islands (hereinafter called the Civil Code) since prior to 1914 " and findings of fact numbered 9, 10, 11, 13, 14, 39 and 44 in so far as it provides that Mrs. Perkins was represented throughout the proceedings in case No. 37517 by attorneys of her own selection, 46, 47, 48 and 61 in so far as it limits the claim of fraud or mistake to lack of advice as to the applicability of Article 10 of the Civil Code, 64 and 65 are without evidence to support them and constitute rulings of law which survive a unanimous affirmance by the Appellate Division and are erroneous. Findings of fact numbered 15, 17, 19, 20, 22, 26 and 42 are conclusions of law and are without evidence or findings to sustain them. Requests of defend-

ant Perkins to find, as facts, numbers 7, 8 (as to part stricken out by trial court), 11, 12, 16, 19, 20, 21, 25, 26, 29, 31, 32, 33, 35, 36, 37, 43, 46, 48, 49, 50, 51, 52 and 53 were erroneously refused in that they were based upon uncontradicted evidence and they were not inconsistent with findings of fact made by the trial court. (*Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290, 297.) The conclusions of law by the trial court necessarily fall. For these errors, the judgment must be reversed.

Inasmuch as the laws of New York State determine the title and ownership of the mining stock and findings of fact by the trial court undisturbed by this decision with the requests erroneously refused remain in the case sufficient to sustain a decree for defendants, no question of fact remains for determination, and " this court should render final judgment upon the right of the parties according to law." (*Cohen* v. *A. F. A. Realty Corp.*, 250 N. Y. 262, 264; Civ. Prac. Act, § 584, subd. 2.) Under those circumstances, the judgments of the Appellate Division and of the Special Term should be reversed, the complaint dismissed, and a decree should be made in favor of the defendant Perkins on the second counter-claim. The appeal from the order striking out the third counterclaim was not argued and is not passed upon.

The matter is remitted to the Special Term with directions to make the findings erroneously refused and enter a decree adjudging that the assignment dated July 25, 1930, is null and void and that it be returned to defendant Perkins, that Idonah Slade Perkins is the absolute owner of the stock in question together with all dividends thereon, that plaintiff return to defendant Perkins the deposit receipt for the certificates and deliver to her any substitute certificates received by him therefor with suitable indorsement or assignment, that the defendant trust company deliver the certificates to her and that the plaintiff account for and pay over to her all dividends and increase received by him on account of the 24,000

shares of stock and proceed with accounting therefor, and for such other or additional relief as may be necessary to afford her complete relief in accordance with this decision, with costs to appellant in all courts.

The judgment of the Appellate Division and that of the Special Term should be reversed and judgment directed for the defendant-appellant in accordance with this opinion, with costs in all courts.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur; LEHMAN, J., dissents.

Judgment accordingly.