In the Matter of the Probate of the Will of ANGIOLINA PECORARO, Deceased.

Surrogate's Court, Chemung County, July 22, 1946.

*D. E. Fox* for proponents.

*Ernest E. De Rosa* for contestants.

MATHEWS, S. The contestants object to the jurisdiction of this court on the ground that the decedent was not a resident of Chemung County at the time of her death but was a resident of Oneida County.

For a period of twenty or twenty-five years, Angiolina Pecoraro had resided with her family at 636 Elizabeth Street, in the city of Utica, Oneida County, New York. For a period of about ten years, her son Patrick had resided in the city of Elmira, Chemung County, New York. Patrick was married and had two infant children. Patrick's wife died in the month of June, 1945, and Angiolina and her husband Ralph came to Elmira to attend the funeral. While in Elmira, on the 12th day of June, 1945, Angiolina went to the law offices of Mandeville, Buck, Teeter & Harpending, Esquires, and executed the will offered for probate in this proceeding, describing herself as being of "636 Elizabeth Street, in the City of Utica, New York" and appointing Oneida National Bank & Trust Company as executor.

After the funeral, Angiolina and her husband returned to their home in Utica, and in July, 1945, they came back to Elmira where they lived in the apartment of their said son Patrick until the death of decedent there February 17, 1946. Contestants claim that Angiolina Pecoraro came to Elmira to take care of the two children of Patrick temporarily and only for such period as was necessary until Patrick remarried or made some other arrangements. Proponents contend that Angiolina came to Elmira to live and with the intention of establishing her domicile in said city.

"The word 'residence' while it may not be for all purposes of probate synonymous with 'domicile' is identical in meaning so far as the question of jurisdiction of proceedings to probate the will of a married woman, who lived with her husband prior to her death, is concerned. * * * A woman upon marriage takes the domicile of her husband by operation of law and the legal domicile of the wife is *prima facie* that of her husband. She may not to suit her convenience or pleasure merely, create a legal residence for herself apart from that of her husband while

continuing to live with him." (*Matter of Daggett,* 255 N. Y. 243, headnote.)

We may therefore rely upon the testimony of the husband as to his own domicile for a determination of the domicile of the deceased. Ralph Pecoraro testified that it was not his intention or the intention of his wife to make their home in Elmira; that they intended to return to Utica as soon as Patrick remarried or made other arrangements for the care of his children; that he never intended to abandon Utica as the seat of his domicile.

Confirming the testimony of Ralph Pecoraro, we have the testimony of the daughters Florence Domanico and Anna Pecoraro, with regard to declarations of their mother that Patrick had asked her to come to Elmira to take care of his two infant children and hoped that Patrick would remarry soon and she would return to Utica. In addition, we have the declarations of the decedent herself in her letters to her daughter, stating explicitly in regard to her things that she wanted to set up house in Utica, and asked her son John to take good care of her woolen mattress and her furniture.

The testimony of Ralph Pecoraro should be given considerable weight. In the first place, although he was the husband of decedent, and the petitioner in the proceeding for probate, he was not produced in court at the hearing by the "active proponent" Patrick Pecoraro, and it was necessary for contestants' attorney to send a taxi for him. Secondly, he is disinterested — he shares the same in testacy or intestacy.

I am disregarding the testimony with regard to the earlier plans of the Pecoraro family to remove to Elmira about 1935. Whatever those plans were, they were abandoned, and Patrick himself testified that he dissuaded his parents, and they continued to reside in Utica down to the month of June, 1945. Subsequently, the evidence relied upon by the proponents is the deed of the Utica property dated August 25, 1945, to John Pecoraro, from Patrick, Ralph and Angiolina, reciting that they are all of 351 Maple Avenue, Elmira, New York, and the testimony that Angiolina and Ralph had voted in the city election of Elmira in November, 1945, together with the certificate of the Board of Elections of the City of Elmira, showing them to be qualified voters.

An explanation is available. The ages of the deceased and her husband are not in evidence, but the husband was in court and he is along in years. He testified first through an interpreter but later without one, without too much difficulty. When asked if his wife had understood English, he answered that she

understood about as well as he did. In other words, they were not proficient in English, and the testimony as a whole shows that Patrick, the only one of the children who had gone to college, according to the testimony, was the mentor and advisor of his parents.

This is apparent in the real estate transaction. John in Utica called up Patrick in Elmira and talked to Patrick about purchasing the Utica property. Patrick talked it over with his mother and the deal was made. Patrick and his mother and father went to the law office to have the deed drawn. Patrick resided at 351 Maple Avenue, Elmira, and his father and mother were living there with him, so that it was natural to recite "all of 351 Maple Avenue, Elmira, New York". The purpose of such recital is primarily for identification of the parties, and we cannot attach any special significance to it so far as the father and mother are concerned.

The sale of the Utica property presents the most difficult problem, but to get a clear understanding, it is only necessary to imagine the perfect case. If the sale had been made to a stranger, and the parents had established a home of their own in Elmira, either in anticipation or as a result of such a sale, we would have a sound basis for the conclusion of a change of domicile. But here we have the sale to son John of the Utica property while the parents were living with the son Patrick in the Elmira property. When we fill in the details of the picture, showing that the parents were living with Patrick to take care of his infant children until his remarriage or other arrangements were made, that John had been living in an apartment in the Utica property and acting as caretaker of the property for his mother, and that the same two sons were the favored beneficiaries under their mother's will, we have only an intrafamily transaction which is not conclusive of intention of change of domicile.

The same considerations hold in regard to the voting in Elmira. In the first place, the father testified that Patrick had requested them to vote. In the second place, in respect to a domicile in the city of Utica established by family residence there for a period of twenty to twenty-five years, a single vote in the city of Elmira, while residing in their son's apartment, under the son's guidance, is in itself insufficient to show an intention of change of domicile. (*Matter of Trowbridge*, 266 N. Y. 283.)

In consideration of the foregoing, I hold that decedent was a resident of Oneida County at the time of her death. Order may be drawn accordingly.