## Plains Township School District's Appeal. No. 2

*Andrew J. Zawoiski,* for Plains Township School District.

*John T. Mulhall,* for appellee.

VALENTINE, P. J., January 17, 1947.—Appellee, Loretta Cotter, formerly Loretta Healy, has been a teacher in the schools of Plains Township School District for about 13 years. On January 7, 1939, appellee and Emmett Cotter were married. On July 7, 1941, the board of school directors for said district adopted a resolution requiring professional employes to establish a residence within the township, and providing that the residence of all married female teachers "shall be deemed to be that of their husbands".

Mrs. Cotter was dismissed as a teacher for "wilful and persistent negligence" because of her failure to establish a residence in the township in accordance with the resolution. The Superintendent of Public Instruction reversed the action of the school board, from which order the board appealed and the matter is now before us for disposition.

Mrs. Cotter was born in the Township of Plains, and has lived there during her entire lifetime. Her

present home is 122 East Carey Street, Plains. She is registered and assessed, for the purpose of taxation, at this address.

The position of the school authorities is set forth in the brief of their counsel, as follows:

"Loretta Cotter is the wife of Emmett Cotter, who is a resident of the Borough of West Wyoming. They were married on January 7, 1939. The evidence in the case shows that Emmett Cotter is registered as a voter in said borough and that he has voted there for a number of years.

"We contend that the residence of the husband is that of the wife."

The evidence upon which the board acted established that appellee's husband was registered as a voter in the second ward of West Wyoming and that he had voted in said district. There was no proof where he took his meals, where he slept or where his wearing apparel and other personal property were kept. The fact that the husband voted in West Wyoming is a circumstance to be considered, but the mere fact of voting does not establish domicile or residence: Smith v. Croom, 7 Fla. 81, 158; Mintzer's Estate, 13 Pa. C. C. 465, 467.

The burden of proof in this case was upon the school authorities. The evidence adduced in support of such burden is meager and inconclusive.

Assuming, however, that the residence of appellee's husband is West Wyoming, was the dismissal of the teacher proper?

The action of the school board was based upon the legal fiction that the residence of the husband is that of the wife. The rule is expressed in Starr v. Starr, 78 Pa. Superior Ct. 579, as follows (p. 581):

" 'The maxim that the domicile of the husband is the domicile of the wife was founded upon the theoretic identity of person and of interest between husband and

wife as established by law. It presupposes, from the very nature of the relationship, that the home of the one is the home of the other; that union and harmony shall prevail; that the interests and welfare of both husband and wife shall be promoted and strengthened; and that the parties intend to live together. The law accordingly imposes upon them the mutual duty of cohabitation. In other words, the whole theory of the marital relation involves the idea of a single home, established by the husband and cared for by the wife, where the two shall dwell together. While this duty cannot be enforced physically, yet it is given legal recognition. The husband, as traditional head of the family, and the only one primarily liable for its support, ordinarily selects the home. Under normal circumstances, therefore, the husband's domicile determines that of the wife, because her home in fact follows his.' "

The purpose of requiring a teacher to reside within the territorial limits of the district in which she is employed is to insure her physical presence in that district: Jones v. Kulpmont Borough School District, 333 Pa. 581-3; Stuart v. Board of Education, 161 Cal. 210, 118 Pac. 712. In the Stuart case, in passing upon a resolution requiring such residence, the court said (p. 213) :

". . . In contemplation of the fact that the teacher stands in *loco parentis*, that it may become her duty to devote her time to the welfare of individual pupils even outside of school hours, that the hurrying for boats or trains cannot be regarded as conducive to the highest efficiency on the part of the teacher, that tardiness may result from delays or obstructions in the transportation which a non-resident teacher must use, and finally, as has been said, that the 'benefit of pupils and resulting benefits to their parents and to the community at large, and not the benefit of teachers is the reason for the crea-

tion and support of the public schools' (Bates v. Board of Education, 139 Cal. 145 [72 Pac. 907], all these, and many more considerations not necessary to detail, certainly make the resolution in question a reasonable exercise of the power of the board of education."

In the instant case the purpose of the resolution of the school board has been accomplished, as appellee lives, and always has lived, in the Township of Plains.

Here husband and wife are not living together. We have not been advised as to the details of their separation. In this connection the wife's father testified:

"Q. Mr. Healy, do you recall back in 1941 that the school board had adopted a residence rule as to teachers? A. Yes.

"Q. And at that time your daughter, Loretta, was married? A. Yes, she was.

"Q. Did you have a conversation with your daughter, or your daughter with you, with respect to compliance with that resolution? A. Yes, we did.

"Q. In pursuance of that conversation or understanding, where did Mrs. Cotter take up her residence? A. 122 East Carey Street.

"Q. With you. A. Yes, with me.

"Q. Was Mr. Cotter present at the time this question of residence was discussed with your daughter? A. He was, several times.

"Q. Now in pursuance with that conversation you stated that she then took up her residence with you? A. Yes.

"Q. Has she continued to reside with you since that time? A. She has since that."

This testimony seems to support the conclusion that husband and wife have separated by mutual consent. Under such circumstances has she acquired a domicile or residence separate from that of her husband?

The principle that the domicile of the husband is that of the wife came into being at a time when married women were under many legal disabilities, and has

been handed down to us as part of the common law. Modern statutes have eliminated many of these disabilities. In this State a married woman may contract as freely as an unmarried person. Notwithstanding this fact, a married woman cannot establish a separate domicile against the will of her husband unless he has been guilty of improper conduct. Here the domicile was not established against the husband's will. May a wife not contract with her husband for the maintenance of a separate residence, and will not such a contract, under which she actually lives within the school district, meet the requirements of the resolution of the school board? The question of a right to establish a separate residence, even with the approval of the husband, is not entirely free from doubt. The authorities before which such question has been passed upon are not unanimous.

In Sudbury v. Sudbury, 179 Iowa 1039, 162 N. W. 209, at page 1045, the court said:

"It is contended by appellant that the domicile of the husband is the domicile of the wife, even though the husband and wife are living apart by express agreement, . . . There are cases so holding; but they, or some of them at least, seem to have been decided before changes in the law in regard to husband and wife."

A married woman cannot, to suit her convenience or pleasure merely, create a legal residence for herself apart from that of her husband: In re Daggett's Will, 255 N. Y. 243, 174 N. E. 641.

In In re Florance's Will, 54 Hun 328, 7 N. Y. Supp. 578, it was held that a wife who had lived apart from her husband for 12 years by mutual consent, during which time the husband contributed nothing to her support, acquired domicile in the State in which she lived.

In In re Crosby's Estate, 85 Misc. 679, 148 N. Y. Supp. 1045, it was held that where a husband and wife

lived separately for 26 years, the wife acquired a domicile apart from that of her husband.

In McCormick v. U. S. (U. S. Customs Court), relief was sought from the imposition of a tariff duty on Mrs. McCormick's wearing apparel. The claim was based upon the contention that she was a resident of France, although her husband, Harold F. McCormick, was domiciled in Chicago, Ill. The Tariff Act provided that the personal effects of nonresidents were not subject to duty. The facts set forth in the opinion were, inter alia:

"By express agreement between them, the plaintiff has, during the period since they have been married, resided apart from her husband in France, while he lived in America; that they are friendly and living upon good terms; that they have exchanged visits; that he has visited her every year up to the last two years and she has visited him on two or three different occasions, remaining with him two or three months each time, and that the plaintiff is not dependent on her husband for support."

On this statement of facts, the court held that Mrs. McCormick was domiciled in France. In this connection the court stated:

"Since she (a married woman) has a right to make a contract with her husband, she may contract with him upon the subject of her domicile. The husband may consent to a change of domicile for the wife, and such consent may be express or implied."

One of the leading cases in which the common-law principle, that the domicile of the husband was that of the wife, was fully considered and discussed is Commonwealth v. Rutherford, 160 Va. 524, 169 S. E. 909. In that case the husband lived in Virginia, the wife in New York. The question was stated by the Court of Appeals of Virginia as follows:

"The one question for determination in this case is— Can a married woman, living with her husband on amicable terms, have a separate domicile from his?

"The Commonwealth says that she cannot and predicates its contention upon the common-law fiction that the entity or being of the wife is merged in that of the husband; that the relation genders unity; that they are one and that one is the husband.

"Its contention, in short, is that Judge Rutherford's domicile, during the years constituting the period embraced by the tax assessment, was in Virginia and *ergo* that of Mrs. Rutherford, his wife, was in this State and it must be so taken for all purposes except that of voting, and this sole exception is because of statutory enactment. . . .

"Counsel for Mrs. Rutherford urge that the common-law rule of the merging of the wife's legal identity into that of the husband, for most practical purposes, no longer obtains. That it has been rendered nugatory by statutory provisions and by the evolution of things and of time and that nowhere is the change more notable and complete than in Virginia."

The court of appeals cited, with approval, the decision in McCormick v. U. S., supra, and concluded the opinion by saying:

". . . we travel the path marked out by the authorities cited, which had been foreshadowed by coming events, and which leads to a 'saner and sounder' conclusion than that reached by an adherence to an obsolete and vanishing common-law fiction."

In the recent case of In re Simpsons' Will, 136 N. J. Eq. 597, 42 A. (2d) 373, the principle was stated that the wife's domicile follows that of her husband, and unity of domicile continues during coverture, unless the wife acquires one elsewhere with the husband's consent, which she may properly do.

We are in full accord with the views there expressed. As stated by Cardozo in his treatise "Growth of the Law":

"We take a false and one-sided view of history when we ignore its dynamic aspects. The year books can

teach us how a principle or rule had its beginning. They cannot teach us that what was the beginning shall also be the end."

We, therefore, conclude: (1) That the statement contained in the resolution of the school board that the residence of married female professional employes "shall be deemed to be that of their husbands" states merely a presumption of law which arises from the marriage relation; (2) that the requirements of the resolution are met where, as here, the married female teacher lives within the territorial limits of the school district; (3) that the legal fiction that the residence of a married woman is that of her husband cannot be resorted to as a basis for her dismissal, and (4) that the evidence adduced, and upon which the board of school directors acted, did not warrant the action taken.

Appeal is dismissed and the action of the Superintendent of Public Instruction affirmed.