PERKINS *v.* BENGUET CONSOLIDATED
MINING CO. ET AL.

No. 85.   Argued November 27–28, 1951.—Decided March 3, 1952.

*Robert N. Gorman* argued the cause for petitioner. With him on the brief was *Stanley A. Silversteen.*

*Lucien H. Mercier* argued the cause for respondent. With him on the brief was *Charles G. White.*

MR. JUSTICE BURTON delivered the opinion of the Court.

This case calls for an answer to the question whether the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States precludes Ohio from subjecting a foreign corporation to the jurisdiction of its courts in this action *in personam.* The corporation has been carrying on in Ohio a continuous and systematic, but limited, part of its general business. Its president, while engaged in doing such business in Ohio, has been served with summons in this proceeding. The cause of action sued upon did not arise in Ohio and does not relate to the corporation's activities there. For the reasons hereafter stated, we hold that the Fourteenth Amendment leaves Ohio free to take or decline jurisdiction over the corporation.

After extended litigation elsewhere[1] petitioner, Idonah Slade Perkins, a nonresident of Ohio, filed two actions *in personam* in the Court of Common Pleas of Clermont

---

[1] See *Perkins* v. *Perkins,* 57 Phil. R. 205; *Harden* v. *Benguet Consolidated Mining Co.,* 58 Phil. R. 141; *Perkins* v. *Guaranty Trust Co.,* 274 N. Y. 250, 8 N. E. 2d 849; *Perkins* v. *Benguet Consolidated Min-*

County, Ohio, against the several respondents. Among those sued is the Benguet Consolidated Mining Company, here called the mining company. It is styled a "sociedad anonima" under the laws of the Philippine Islands, where it owns and has operated profitable gold and silver mines. In one action petitioner seeks approximately $68,400 in dividends claimed to be due her as a stockholder. In the other she claims $2,500,000 damages largely because of the company's failure to issue to her certificates for 120,000 shares of its stock.

In each case the trial court sustained a motion to quash the service of summons on the mining company. 99 N. E. 2d 515. The Court of Appeals of Ohio affirmed that decision, 88 Ohio App. 118, 95 N. E. 2d 5, as did the Supreme Court of Ohio, 155 Ohio St. 116, 98 N. E. 2d 33. The cases were consolidated and we granted certiorari in order to pass upon the conclusion voiced within the court below that federal due process required the result there reached. 342 U. S. 808.

We start with the holding of the Supreme Court of Ohio, not contested here, that, under Ohio law, the mining company is to be treated as a foreign corporation.[2] Actual notice of the proceeding was given to the corpora-

ing Co., 55 Cal. App. 2d 720, 132 P. 2d 70, rehearing denied, 55 Cal. App. 2d 774, 132 P. 2d 102, cert. denied, 319 U. S. 774; 60 Cal. App. 2d 845, 141 P. 2d 19, cert. denied, 320 U. S. 803, 815; Perkins v. First National Bank of Cincinnati (Ct. of Common Pleas, Hamilton County, Ohio), 37 Ohio Op. 162, 79 N. E. 2d 159.

[2] Ohio requires a foreign corporation to secure a license to transact "business" in that State, Throckmorton's Ohio Code, 1940, § 8625–4, and to appoint a "designated agent" upon whom process may be served, §§ 8625–2, 8625–5. The mining company has neither secured such a license nor designated such an agent. While this may make it subject to penalties and handicaps, this does not prevent it from transacting business or being sued. § 8625–25. If it has a "managing agent" in Ohio, service may be made upon him. § 11290. Such service is a permissive alternative to service on the corporation

tion in the instant case through regular service of summons upon its president while he was in Ohio acting in that capacity. Accordingly, there can be no jurisdictional objection based upon a lack of notice to a responsible representative of the corporation.

The answer to the question of whether the state courts of Ohio are open to a proceeding *in personam*, against an amply notified foreign corporation, to enforce a cause of action not arising in Ohio and not related to the business or activities of the corporation in that State rests entirely upon the law of Ohio, unless the Due Process Clause of the Fourteenth Amendment compels a decision either way.

The suggestion that federal due process *compels* the State to open its courts to such a case has no substance.

> "Provisions for making foreign corporations subject to service in the State is a matter of legislative discretion, and a failure to provide for such service is not a denial of due process. Still less is it incumbent upon a State in furnishing such process to make the jurisdiction over the foreign corporation wide enough to include the adjudication of transitory actions not arising in the State." *Missouri P. R. Co.* v. *Clarendon Co.*, 257 U. S. 533, 535.

---

through its president or other chief officer. § 11288. *Lively* v. *Picton*, 218 F. 401, 406–407 (C. A. 6th Cir.). The evidence as to the business activities of the corporation in Ohio is summarized by the Ohio Court of Appeals. 88 Ohio App. 118, 119–125, 95 N. E. 2d 5, 6–9. That court held that such activities did not constitute the transaction of business referred to in the Code. In its syllabus, however, the Supreme Court of Ohio, without passing upon the sufficiency of such acts for the above statutory purpose, and without defining its use of the term, affirmed the judgment dismissing the complaint and assumed that what the corporation had done in Ohio constituted "doing business" to an extent sufficient to be recognized in reaching its decision.

Also without merit is the argument that merely because Ohio permits a complainant to maintain a proceeding *in personam* in its courts against a properly served nonresident natural person to enforce a cause of action which does not arise out of anything done in Ohio, therefore, the Constitution of the United States *compels* Ohio to provide like relief against a foreign corporation.

A more serious question is presented by the claim that the Due Process Clause of the Fourteenth Amendment *prohibits* Ohio from granting such relief against a foreign corporation. The syllabus in the report of the case below, while denying the relief sought, does not indicate whether the Supreme Court of Ohio rested its decision on Ohio law or on the Fourteenth Amendment. The first paragraph of that syllabus is as follows:

"1. The doing of business in this state by a foreign corporation, which has not appointed a statutory agent upon whom service of process against the corporation can be made in this state or otherwise consented to service of summons upon it in actions brought in this state, will not make the corporation subject to service of summons in an action in personam brought in the courts of this state to enforce a cause of action not arising in this state and in no way related to the business or activities of the corporation in this state." 155 Ohio St. 116, 117, 98 N. E. 2d 33, 34.

If the above statement stood alone, it might mean that the decision rested solely upon the law of Ohio. In support of that possibility we are told that, under the rules and practice of the Supreme Court of Ohio, only the syllabus necessarily carries the approval of that court.[3] As

---

[3] In 1858 the Supreme Court of Ohio promulgated the following rule:

"A syllabus of the points decided by the Court in each case, shall be stated, in writing, by the Judge assigned to deliver the opinion of

we understand the Ohio practice, the syllabus of its Supreme Court constitutes the official opinion of that court but it must be read in the light of the facts and issues of the case.

the Court, which shall be confined to the points of law, arising from the facts of the case, that have been determined by the Court. And the syllabus shall be submitted to the Judges concurring therein, for revisal, before publication thereof; and it shall be inserted in the book of reports without alteration, unless by the consent of the Judges concurring therein." 5 Ohio St. vii.

This policy has been recognized by statute. Bates Ohio R. S. § 427, as amended, 103 Ohio Laws 1913, § 1483, and 108 Ohio Laws 1919, § 1483. It appears now in Throckmorton's Ohio Code, 1940, § 1483, as follows:

"Whenever it has been thus decided to report a case for publication the syllabus thereof shall be prepared by the judge delivering the opinion, and approved by a majority of the members of the court; and the report may be per curiam, or if an opinion be reported, the same shall be written in as brief and concise form as may be consistent with a clear presentation of the law of the case. . . . Only such cases as are hereafter reported in accordance with the provisions of this section shall be recognized by and receive the official sanction of any court within the state."

There are many references to this practice, both in the syllabi and opinions written for the Supreme Court of Ohio. Typical of these is the following:

"It has long been the rule of this court that the syllabus contains the law of the case. It is the only part of the opinion requiring the approval of all the members concurring in the judgment. Where the judge writing an opinion discusses matters or gives expression to his views on questions not contained in the syllabus, it is merely the personal opinion of that judge." *State ex rel. Donahey* v. *Edmondson*, 89 Ohio St. 93, 107–108, 105 N. E. 269, 273.

See also, *Williamson Heater Co.* v. *Radich*, 128 Ohio St. 124, 190 N. E. 403; *Baltimore & O. R. Co.* v. *Baillie*, 112 Ohio St. 567, 148 N. E. 233. A syllabus must be read in the light of the facts in the case, even where brought out in the accompanying opinion rather than in the syllabus itself. See *Williamson Heater Co.* v. *Radich, supra; Perkins* v. *Bright*, 109 Ohio St. 14, 19–20, 141 N. E. 689, 690–691; *In re Poage*, 87 Ohio St. 72, 82–83, 100 N. E. 125, 127–128.

The only opinion accompanying the syllabus of the court below places the concurrence of its author unequivocally upon the ground that the Due Process Clause of the Fourteenth Amendment *prohibits* the Ohio courts from exercising jurisdiction over the respondent corporation in this proceeding.[4]  That opinion is an official part of the report of the case.  The report, however, does not disclose to what extent, if any, the other members of the court may have shared the view expressed in that opinion.  Accordingly, for us to allow the judgment to stand as it is would risk an affirmance of a decision which might have been decided differently if the court below had felt free, under our decisions, to do so.

The cases primarily relied on by the author of the opinion accompanying the syllabus below are *Old Wayne Life Assn.* v. *McDonough,* 204 U. S. 8, and *Simon* v. *Southern R. Co.,* 236 U. S. 115.  Unlike the case at bar, no actual notice of the proceedings was received in those cases by a

---

[4] "However, the doing of business in a state by a foreign corporation, which has not appointed a statutory agent upon whom service of process against the corporation can be made in that state or otherwise consented to service of summons upon it in actions brought in that state, will not make the corporation subject to service of summons in an action in personam brought in the courts of that state to enforce a cause of action in no way related to the business or activities of the corporation in that state.  *Old Wayne Mutual Life Assn. of Indianapolis* v. *McDonough,* 204 U. S., 8, 22, 23, 51 L. Ed., 345, 27 S. Ct., 236; *Simon* v. *Southern Ry. Co.,* 236 U. S., 115, 129, 130 and 132, 59 L. Ed., 492, 35 S. Ct., 255.  See, also, *Pennsylvania Fire Ins. Co. of Philadelphia* v. *Gold Issue Mining & Milling Co.,* 243 U. S., 93, 95 and 96, 61 L. Ed., 610, 37 S. Ct., 344; *Robert Mitchell Furniture Co.* v. *Selden Breck Construction Co.,* 257 U. S., 213, 215 and 216, 66 L. Ed., 201, 42 S. Ct., 84; *International Shoe Co.* v. *Washington,* 326 U. S., 310, 319 and 320, 90 L. Ed., 95, 66 S. Ct., 154.

"An examination of the opinions of the Supreme Court of the United States in the foregoing cases will clearly disclose that service of summons in such an instance would be void as wanting in due process of law."  155 Ohio St. 116, 119–120, 98 N. E. 2d 33, 35.

responsible representative of the foreign corporation. In each case, the public official who was served with process in an attempt to bind the foreign corporation was held to lack the necessary authority to accept service so as to bind it in a proceeding to enforce a cause of action arising outside of the state of the forum. See 204 U. S. at 22–23, and 236 U. S. at 130. The necessary result was a finding of inadequate service in each case and a conclusion that the foreign corporation was not bound by it. The same would be true today in a like proceeding where the only service had and the only notice given was that directed to a public official who had no authority, by statute or otherwise, to accept it in that kind of a proceeding. At the time of rendering the above decisions this Court was aided, in reaching its conclusion as to the limited scope of the statutory authority of the public officials, by this Court's conception that the Due Process Clause of the Fourteenth Amendment precluded a state from giving its public officials authority to accept service in terms broad enough to bind a foreign corporation in proceedings against it to enforce an obligation arising outside of the state of the forum. That conception now has been modified by the rationale adopted in later decisions and particularly in *International Shoe Co.* v. *Washington*, 326 U. S. 310.

Today if an authorized representative of a foreign corporation be physically present in the state of the forum and be there engaged in activities appropriate to accepting service or receiving notice on its behalf, we recognize that there is no unfairness in subjecting that corporation to the jurisdiction of the courts of that state through such service of process upon that representative. This has been squarely held to be so in a proceeding *in personam* against such a corporation, at least in relation to a cause of action

arising out of the corporation's activities within the state of the forum.[5]

The essence of the issue here, at the constitutional level, is a like one of general fairness to the corporation. Appropriate tests for that are discussed in *International Shoe Co.* v. *Washington, supra,* at 317–320. The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case. The corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test. For example, the state of the forum may by statute require a foreign mining corporation to secure a license in order lawfully to carry on there such functional intrastate operations as those of mining or refining ore. On the other hand, if the same corporation carries on, in that state, other continuous and systematic corporate activities as it did here—consisting of directors' meetings, business correspondence, banking, stock transfers, payment of salaries, purchasing of machinery, etc.—those activities are enough to make it fair and reasonable to subject that corporation to proceedings *in personam* in that state, at least insofar as the proceedings *in personam* seek to en-

------

[5] ". . . The obligation which is here sued upon arose out of those very activities. It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which appellant has incurred there. Hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure." *International Shoe Co.* v. *Washington, supra,* at 320.

446

force causes of action relating to those very activities or to other activities of the corporation within the state.

The instant case takes us one step further to a proceeding *in personam* to enforce a cause of action not arising out of the corporation's activities in the state of the forum. Using the tests mentioned above we find no requirement of federal due process that either *prohibits* Ohio from opening its courts to the cause of action here presented or *compels* Ohio to do so. This conforms to the realistic reasoning in *International Shoe Co.* v. *Washington, supra,* at 318–319:

> ". . . there have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities. See *Missouri, K. & T. R. Co.* v. *Reynolds,* 255 U. S. 565; [6] *Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259, 115 N. E. 915; cf. *St. Louis S. W. R. Co.* v. *Alexander, supra* [227 U. S. 218].
>
> ". . . some of the decisions holding the corporation amenable to suit have been supported by resort to the legal fiction that it has given its consent to service and suit, consent being implied from its presence in the state through the acts of its authorized agents. *Lafayette Insurance Co.* v. *French,* 18 How. 404, 407; *St. Clair* v. *Cox, supra* [106 U. S. 350], 356; *Commercial Mutual Co.* v. *Davis, supra* [213 U. S.

---

[6] This citation does not disclose the significance of this decision but light is thrown upon it by the opinions of the state court below. *Reynolds* v. *Missouri, K. & T. R. Co.,* 224 Mass. 379, 113 N. E. 413; 228 Mass. 584, 117 N. E. 913. In addition to the cases cited in the text see *Barrow S. S. Co.* v. *Kane,* 170 U. S. 100; *Pennsylvania Fire Insurance Co.* v. *Gold Issue Mining Co.,* 243 U. S. 93 (statutory agent appointed); *Philadelphia & Reading R. Co.* v. *McKibbin,* 243 U. S. 264, 268–269 (question left open).

245], 254; *Washington* v. *Superior Court,* 289 U. S. 361, 364–365. But more realistically it may be said that those authorized acts were of such a nature as to justify the fiction. *Smolik* v. *Philadelphia & Reading Co.,* 222 F. 148, 151. Henderson, The Position of Foreign Corporations in American Constitutional Law, 94–95.

". . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. *Pennoyer* v. *Neff, supra* [95 U. S. 714]; *Minnesota Commercial Assn.* v. *Benn,* 261 U. S. 140."

It remains only to consider, in more detail, the issue of whether, as a matter of federal due process, the business done in Ohio by the respondent mining company was sufficiently substantial and of such a nature as to *permit* Ohio to entertain a cause of action against a foreign corporation, where the cause of action arose from activities entirely distinct from its activities in Ohio. See *International Shoe Co.* v. *Washington, supra,* at 318.

The Ohio Court of Appeals summarized the evidence on the subject. 88 Ohio App. at 119–125, 95 N. E. 2d at 6–9. From that summary the following facts are substantially beyond controversy: The company's mining properties were in the Philippine Islands. Its operations there were completely halted during the occupation of the Islands by the Japanese. During that interim the president, who was also the general manager and principal stockholder of the company, returned to his home in Clermont County, Ohio. There he maintained an office in

which he conducted his personal affairs and did many things on behalf of the company. He kept there office files of the company. He carried on there correspondence relating to the business of the company and to its employees. He drew and distributed there salary checks on behalf of the company, both in his own favor as president and in favor of two company secretaries who worked there with him. He used and maintained in Clermont County, Ohio, two active bank accounts carrying substantial balances of company funds. A bank in Hamilton County, Ohio, acted as transfer agent for the stock of the company. Several directors' meetings were held at his office or home in Clermont County. From that office he supervised policies dealing with the rehabilitation of the corporation's properties in the Philippines and he dispatched funds to cover purchases of machinery for such rehabilitation. Thus he carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company. He there discharged his duties as president and general manager, both during the occupation of the company's properties by the Japanese and immediately thereafter. While no mining properties in Ohio were owned or operated by the company, many of its wartime activities were directed from Ohio and were being given the personal attention of its president in that State at the time he was served with summons. Consideration of the circumstances which, under the law of Ohio, ultimately will determine whether the courts of that State will choose to take jurisdiction over the corporation is reserved for the courts of that State. Without reaching that issue of state policy, we conclude that, under the circumstances above recited, it would not violate federal due process for Ohio either to take or decline jurisdiction of the corporation in this proceeding. This relieves the Ohio courts of the restriction relied upon in the opinion

accompanying the syllabus below and which may have influenced the judgment of the court below.

Accordingly, the judgment of the Supreme Court of Ohio is vacated and the cause is remanded to that court for further proceedings in the light of this opinion.[7]

*It is so ordered.*

MR. JUSTICE BLACK concurs in the result.

MR. JUSTICE MINTON, with whom THE CHIEF JUSTICE joins, dissenting.

As I understand the practice in Ohio, the law as agreed to by the court is stated in the syllabus. If an opinion is filed, it expresses the views of the writer of the opinion and of those who may join him as to why the law was so declared in the syllabus. Judge Taft alone filed an opinion in the instant case.

The law as declared in the syllabus, which is the whole court speaking, is clearly based upon adequate state grounds. Judge Taft in his opinion expresses the view that the opinions of this Court on due process grounds require the court to declare the law as stated in the syllabus. As the majority opinion of this Court points out, this is an erroneous view of this Court's decisions. "This brings the situation clearly within the settled rule whereby this Court will not review a State court decision resting on an adequate and independent non-federal ground even though the State court may have also summoned to its support an erroneous view of federal law." *Radio Station WOW* v. *Johnson,* 326 U. S. 120, 129.

The case of *State Tax Comm'n* v. *Van Cott,* 306 U. S. 511, is not this case. There the case was not clearly de-

---

[7] For like procedure followed under somewhat comparable circumstances see *State Tax Comm'n* v. *Van Cott,* 306 U. S. 511.

cided on an adequate state ground, but the state ground and the federal ground were so interwoven that this Court was "unable to conclude that the judgment rests upon an independent interpretation of the state law." (P. 514.) In the instant case, a clear statement of the state law is made by the court in the syllabus. Only Judge Taft has summoned the erroneous view of this Court's decisions to his support of the adequate state ground approved by the whole court.

What we are saying to Ohio is: "You have decided this case on an adequate state ground, denying service, which you had a right to do, but you don't have to do it if you don't want to, as far as the decisions of this Court are concerned." I think what we are doing is giving gratuitously an advisory opinion to the Ohio Supreme Court. I would dismiss the writ as improvidently granted.