JUSTICE MCKINNON,
dissenting.
¶32 I respectfully dissent from the Court’s opinion. I would conclude that the District Courts lack general (all-purpose) personal jurisdiction over BNSF in the consolidated appeals under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The United States Supreme Court has made clear twice within the last five years that a state court may assert general jurisdiction over a foreign corporation under the Due Process Clause of the Fourteenth Amendment “only when the corporation’s affiliations with the State in *430 which suit is brought are so constant and pervasive ‘as to render it essentially at home in the forum State.’ ” Daimler AG v. Bauman, _ U.S. _, 134 S. Ct. 746, 751 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011)) (brackets omitted). The United States Supreme Court has made it equally clear that merely “engag[ing] in a substantial, continuous, and systematic course of business” with the forum State is insufficient standing alone to subject a defendant to general jurisdiction. Daimler, 134 S. Ct. at 761. Such a formulation, the Supreme Court has explained, would be “unacceptably grasping.” Daimler, 134 S. Ct. at 761.
¶33 Disregarding the United States Supreme Court’s express holdings in Goodyear and in Daimler, this Court entirely rejects the “at home” standard in favor of substantially the same formulation that the Supreme Court rejected. Despite the United States Supreme Court’s conclusion that permitting general jurisdiction wherever a nonresident defendant is engaging in a substantial, continuous, and systematic course of business would deprive the defendant due process of law, this Court holds that BNSF can be haled into Montana state courts under the “doing business” standard. The reasons that this Court gives for disregarding the Supreme Court’s “at home” formulation and adopting the “doing business” standard are, in my view, unpersuasive. This case is quite clearly controlled by the United States Supreme Court’s holdings in Goodyear andDaimler and the “at home” standard set forth therein.
I
¶34 The Court does not contend, nor could it seriously contend, that the plaintiffs are able to satisfy the “at home” standard enunciated by the United States Supreme Court in Goodyear and in Daimler. In Goodyear, decided in 2011, the Supreme Court held that under the Due Process Clause a “court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so ‘continuous and systematic’ as to render them essentially at home in the forum State.” Goodyear, 564 U.S. at 919, 131 S. Ct. at 2851. In the wake of Goodyear, many legal commentators — who had come to believe that general jurisdiction could be exercised wherever a corporation engaged in continuous and systematic business — openly questioned whether the Supreme Court actually intended to impose such a stringent standard for general jurisdiction under the Due Process Clause. See, e.g., Todd *431 David Peterson, The Timing of Minimum Contacts After Goodyear and McIntyre, 80 Geo.Wash. L. Rev. 202, 214-15, 217 (2011) (contending that the Court’s restriction of general jurisdiction to corporations that are “essentially at home” should he dismissed as “loose language”). ¶35 In Daimler, decided three years later, the Court reaffirmed its holding in Goodyear and expanded upon its earlier analysis. In Daimler, the plaintiffs brought suit in California federal court against the German corporation Daimler, the manufacturer of Mercedes-Benz automobiles, seeking damages under federal statutory law on the theory that Daimler unlawfully aided the commission of horrific human rights violations against them in Argentina. The plaintiffs maintained that the federal court could exercise general jurisdiction over Daimler because of the “substantial, continuous, and systematic” contacts in California of Daimler’s wholly owned subsidiary, Mercedes-Benz USA, who operates “multiple California-based facilities” and is “the largest supplier of luxury vehicles to the California market.” Daimler, 134 S. Ct. at 752.
¶36 The Court assumed, for purposes of its personal jurisdiction analysis, that Mercedes-Benz USA’s contacts were fully imputable to Daimler. Still, even with the contacts of Mercedes-Benz fully attributable to Daimler, the Court rejected the contention that Daimler was subject to general jurisdiction in California. The Court held that the standard of “substantial, continuous, and systematic course of business” was “unacceptably grasping” and “exorbitant,” explaining that the Due Process Clause imposes a more stringent standard for state courts attempting to exercise general jurisdiction. Daimler, 134 S. Ct. at 761. The Court explained that the proper inquiry for purposes of general jurisdiction “is not whether a foreign corporation’s in-forum contacts can be said to be in some sense ‘continuous and systematic,’ ” but rather “whether that corporation’s affiliations with the State are so ‘continuous and systematic’ as to render it essentially at home in the forum State.” Daimler, 134 S. Ct. at 752 (quoting Goodyear, 564 U.S. at 919, 131 S. Ct. at 2851) (brackets and internal quotation marks omitted) (emphasis added). A corporation is “essentially at home,” the Court instructed, where it is incorporated or where it has its principal place of business. Daimler, 134 S. Ct. at 760. The Court explained that only in an “exceptional case” will a corporation be deemed essentially at home in another State. Daimler, 134 S. Ct. at 761 n.19.
¶37 Here, there is no dispute that BNSF’s affiliations with Montana are not so substantial as to render it essentially “at home” in this State. BNSF is not incorporated under the laws of Montana, nor does *432 it have its principal place of business in Montana. These two facts alone are strong evidence that BNSF is not at home in Montana. “With respect to a corporation, the place of incorporation and principal place of business are ‘paradigm bases for general jurisdiction.’ ” Daimler, 134 S. Ct. at 760 (brackets, ellipsis, and citation omitted). “Those affiliations have the virtue of being unique — that is, each ordinarily indicates only one place — as well as easily ascertainable.” Daimler, 134 S. Ct. at 760. It is only in an “exceptional case” that a State will have general jurisdiction over a corporation outside of its place of incorporation and principal place of business. Daimler, 134 S. Ct. at 761 n.19.
¶38 There is nothing exceptional about BNSF’s contacts with Montana that would permit general jurisdiction. While BNSF certainly conducts substantial business in Montana, “the general jurisdiction inquiry does not ‘focus solely on the magnitude of the defendant’s in-state contacts.’ ” Daimler, 134 S. Ct. at 762 n.20 (brackets and citation omitted). Indeed, in Daimler, the Court refused to find personal jurisdiction despite the fact that Mercedes-Benz USA distributes tens of thousands of cars to California, generates billions of dollars in revenue from California, and has multiple facilities in the State, including a regional headquarters. Daimler, 134 S. Ct. at 752.[1] “General jurisdiction instead calls for an appraisal of a corporation’s activities in their entirety, nationwide and worldwide.” Daimler, 134 S. Ct. at 762 n.20. “A corporation that operates in many places can scarcely be deemed at home in all of them.” Daimler, 134 S. Ct. at 762 n.20.
¶39 Applying the United States Supreme Court’s directive and comparing BNSF’s activities in Montana with its nationwide activities, it is clear that BNSF is not at home in Montana. BNSF receives less than 10% of its revenue from Montana; barely 6% of BNSF’s total track mileage is located in Montana; and less than 5% of BNSF’s total workforce is located in Montana. These percentages, though slightly greater, differ little from those the Court found to be insufficient in Daimler. See Daimler, 134 S. Ct. at 752 (noting Mercedes Benz USA’s sales make up 2.4% of Daimler’s worldwide sales).
¶40 In Daimler, the Court cited Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S. Ct. 413, as the “textbook” example of an “exceptional case” where general jurisdiction may exist outside the corporation’s place of incorporation and principal place of business. In *433 Perkins, the defendant company’s primary place of business was, because of wartime circumstances, temporarily located in Ohio, where the company was sued. Perkins, 342 U.S. 437, 447-48, 72 S. Ct. at 419-20. The Court deemed the place of service in those unusual circumstances “a surrogate for the place of incorporation or head office.” Daimler, 134 S. Ct. at 756 n.8 (citations omitted). On that basis alone, the Court concluded that Ohio courts could exercise general jurisdiction over the company without offending due process. Daimler, 134 S. Ct. at 756. In contrast, BNSF’s contacts with Montana are far from establishing a surrogate principal place of business in this State.
¶41 In short, BNSF’s contacts with Montana are insufficient to satisfy the due process standard set forth by Goodyear and Daimler to permit BNSF to be haled into courts of this State. That much is not in dispute. And, in my view, that is where the analysis of this case should come to end.
II
¶42 Acknowledging that BNSF is not “at home” in Montana, the Court persists that BNSF can be brought before tribunals of this State under a less stringent standard, holding that BNSF need only be “doing business” in Montana for state district courts to sustain general jurisdiction. Opinion, ¶ 12. The Court reasons that the Due Process Clause demands less in this case than in Goodyear and in Daimler because, unlike in those cases, this case involves a “FELA claim [and] a railroad defendant.” Opinion, ¶ 16.
¶43 I must disagree with the Court’s refusal to apply the teachings of Goodyear and Daimler. Flowing from the Due Process Clause, the requirement that a state court have personal jurisdiction is “first of all an individual right” under the Fourteenth Amendment. Insurance Corp. of Ireland v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 702, 102 S. Ct. 2099, 2105 (1982). “It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.” Insurance Corp. of Ireland, 456 U.S. at 702, 102 S. Ct. at 2104. That is to say, personal jurisdiction imposes a limitation on a state court’s power to “protect the liberty of the nonresident defendant.” Walden v. Fiore, _ U.S. _, 134 S. Ct. 1115, 1122 (2014).
¶44 I perceive no sound basis to afford BNSF less constitutional protection than the defendants were afforded in Goodyear and in Daimler. The United States Supreme Court has consistently explained that the inquiry under personal jurisdiction does not focus on the unilateral actions of the plaintiff, but instead focuses on the *434 defendant’s relationship with the forum State. Walden, 134 S. Ct. at 1122 (citing Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 417, 104 S. Ct. 1868, 1873 (1984)). Indeed, there is no authority for the proposition that the quality or quantity of process afforded a defendant by the requirement of general jurisdiction depends on the type of cause of action pursued by the plaintiff or the occupation of the defendant. A defendant does not forfeit liberty or have a diminished liberty interest merely because the plaintiff brings a FELA action. Nor does a defendant forfeit constitutional protection by operating a railroad. It is thus altogether immaterial under the general jurisdiction inquiry that the plaintiffs here brought a FELA claim rather than a Torture Victim Protection claim {Daimler) or a negligence claim {Goodyear). It is likewise wholly immaterial that BNSF operates a railroad as opposed to a car dealership {Daimler) or a tire manufacturing operation (Goodyear). The Due Process Clause requires a defendant to be “at home” to be subject to general jurisdiction in the forum State, Daimler, 134 S. Ct. at 754, and the Supreme Court has defined “at home” for a corporation as “the place of incorporation” and the “principal place of business” of the corporation. Daimler, 134 S. Ct. at 760. In so doing, the Court has established the minimum, base-line guarantee of due process that must be afforded defendants by the Constitution of the United States. BNSF should not be haled into a state court in Montana under any less stringent of a standard. Simply put, there is not a different, less protective Due Process Clause for BNSF; it is entitled to the same due process of law as every other defendant.
¶45 The Court persists that a “century” of United States Supreme Court precedent dictates otherwise, Opinion, ¶ 22, reasoning that “decades of consistent” Supreme Court decisions show that a nonresident railroad is subject to general jurisdiction wherever the railroad is “doing business.” Opinion, ¶ 17. Remarkably, the Court arrives at this conclusion without citing a single general jurisdiction case. The Court instead cites three United States Supreme Court decisions — Pope, Miles, and Terte — having nothing to do with general jurisdiction under the Due Process Clause. In Pope and in Miles, the Supreme Court addressed whether FELA prevented state courts from using their equitable powers to enjoin their residents from bringing vexatious suits in other state courts. Pope, 345 U.S. at 380, 73 S. Ct. at 750; Miles, 315 U.S. at 699, 62 S. Ct. at 828. In Terte, the Court addressed whether interstate commerce is unduly burdened by bringing an action under FELA in respect to an injury sustained in *435 another State. Terte, 284 U.S. at 287, 52 S. Ct. at 153. These cases do not so much as mention the Due Process Clause or general jurisdiction. Nor have the cases ever been cited by the United States Supreme Court or any other court — until now — for any proposition remotely related to general jurisdiction. This claimed “century” of United States Supreme Court precedent permitting general jurisdiction wherever a nonresident railroad is doing business simply does not exist.
¶46 Further, even if the cases cited by the Court actually stood for the propositions cited for, it would not matter. Notwithstanding the Court’s statement that these cases show “decades of consistent” precedent, none of the cited cases were decided within the last six decades. In Daimler, the plaintiffs emphasized earlier Supreme Court decisions that seemingly upheld general jurisdiction under a formulation less stringent than the “at home” standard. The Supreme Court, however, refused to follow these decisions, explaining that they were decided in a different “era” before modern general jurisdiction developed. Daimler, 134 S. Ct. at 761 n.18. After dismissing the decisions in a footnote, the Court made clear once again that the proper inquiry under the Due Process Clause is whether a nonresident corporation’s contacts are so constant and pervasive as to render it “essentially at home in the forum State.” Daimler, 134 S. Ct. at 761. Thus, whatever standard earlier decisions may or may not have used, the Supreme Court has now made clear that the Due Process Clause of the Fourteenth Amendment requires a defendant to be “at home” in the forum State to be subject to general jurisdiction.
¶47 Lastly, the Court contends that Congress, not the Constitution, controls the sufficiency of process that is required to hale BNSF into state courts in Montana. Pushing aside the constitutional restrictions imposed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Court maintains that Congress has conferred general jurisdiction under 45 U.S.C. § 56 of FELA, to state courts and has chosen to provide BNSF with less protection than the United States Supreme Court has held is required by the Due Process Clause.
¶48 I again must disagree with the Court. Congress did not, nor could it, do so. First, Congress did not confer personal jurisdiction with the passage of 45 U.S.C. § 56. Section 56 is a venue statute for the federal courts, not a grant of personal jurisdiction to state courts. The United States Supreme Court has made this point clear: 45 U.S.C. § “[5]6 establishes venue for an action in the federal courts.” Balt. & O. R. Co. v. Kepner, 314 U.S. 44, 52, 62 S. Ct. 6, 9 (1941) (emphasis added). Indeed, the “phrasing of the section is not unique: it follows the *436 familiar pattern generally employed by Congress in framing venue provisions.” Kepner, 314 U.S. at 56, 62 S. Ct. at 11 (Frankfurter, J., dissenting) (citing several federal venue statutes). Notably, even the cases the Court cites — for the erroneous proposition that a “century” of Supreme Court precedent dictates general jurisdiction exists wherever a railroad is doing business — expressly state that § 56 confers venue in the federal courts. Miles, 315 U.S. at 710, 62 S. Ct. at 833 (“the provision of § [5]6 ‘filled the entire field of venue in federal courts’ ”); Pope, 345 U.S. at 383, 73 S. Ct. at 752 (§ 56 provides an “employee a right to establish venue in the federal court”) (emphasis added). Personal jurisdiction does not result from 45 U.S.C. § 56, and in the century since its enactment, no court has ever concluded that it does.
¶49 Second, assuming for the sake of argument that § 56 does confer personal jurisdiction, it surely does not confer it to state courts. 45 U.S.C. § 56 provides that “an action may be brought in a circuit [district] court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action.” (Emphasis added). By its plain language, § 56 applies only to “court[s] of the United States.” Seizing on the statute’s subsequent language that allows for “concurrent jurisdiction” with the several States, the Court persists that this language grants state courts personal jurisdiction. The phrase “concurrent jurisdiction” is a well-known term of art long employed by Congress and courts to refer to subject-matter jurisdiction, not personal jurisdiction. See 21 U.S.C. § 467e; 48 U.S.C. § 1704; 21 U.S.C. § 678; 15 U.S.C. § 1829; 29 U.S.C. § 1132(e)(1); Claflin v. Houseman, 93 U.S. 130, 134 (1876); Mims v. Arrow Fin. Servs., LLC, _ U.S. _, 132 S. Ct. 740, 745 (2012).[2]'[3] Furthermore, the United States Supreme Court has repeatedly interpreted the concurrent jurisdiction language within 45 U.S.C. § 56 to denote the conveyance of subject-matter jurisdiction. See, e.g., Chesapeake & Ohio R. Co. v. Stapleton, 279 U.S. 587, 49 S. Ct. 442 (1929); Norfolk S. Ry. v. Sorrell, 549 U.S. 158, 127 S. Ct. 799 (2007). *437 The congressional grant of concurrent jurisdiction with the several States clearly refers to a grant of subject-matter jurisdiction over FELA actions, not a grant of personal jurisdiction over individual defendants.
¶50 Lastly, Congress lacks authority to confer personal jurisdiction to state courts where the Due Process Clause of the Fourteenth Amendment would prohibit it. The Due Process Clause of the Fourteenth Amendment provides that “[n]o State shall... deprive any person of life, liberty, or property, without due process of law.” The United States Supreme Court has made clear that the Constitution “grants Congress no power to restrict, abrogate, or dilute these guarantees.” Miss. Univ. for Women v. Hogan, 458 U.S. 718, 732, 102 S. Ct. 3331, 3340 (1982). Indeed, it is well established that “neither Congress nor a State can validate a law that denies the rights guaranteed by the Fourteenth Amendment.” Hogan, 458 U.S. at 732, 102 S. Ct. at 3340 (citing Califano v. Goldfarb, 430 U.S. 199, 210, 97 S. Ct. 1021, 1028 (1977); Williams v. Rhodes, 393 U.S. 23, 29, 89 S. Ct. 5, 10 (1968)).
¶51 As explained above, the requirement that a state court have personal jurisdiction flows from the Due Process Clause of the Fourteenth Amendment and protects the individual “liberty of the nonresident defendant.” Walden, 134 S. Ct. at 1122. The United States Supreme Court has held that consistent with the guarantee of individual liberty that Clause prohibits a nonresident defendant from being haled into a state court for all purposes unless the defendant’s “affiliations with the State in which suit is brought are so constant and pervasive ‘as to render it essentially at home in the forum State.’ ” Daimler, 134 S. Ct. at 751 (quoting Goodyear, 564 U.S. at 919, 131 S. Ct. at 2851) (brackets omitted). Congress cannot by way of 45 U.S.C. § 56, or any federal law, “restrict, abrogate, or dilute” that constitutional guarantee. Hogan, 458 U.S. at 732, 102 S. Ct. at 3340.
Ill
¶52 In sum, the Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that “[n]o State shall ... deprive any person of life, liberty, or property, without due process of law.” That Clause prohibits a state court from exercising general jurisdiction over a nonresident defendant unless the defendant’s contacts with the State are so pervasive as to render the defendant essentially “at home” in the State. Daimler, 134 S. Ct. at 751. Because there is no dispute that BNSF’s contacts are not so pervasive as to *438 render it essentially at home in Montana, I would conclude that the two Montana State District Courts in the consolidated appeals lack general jurisdiction over BNSF under the Due Process Clause of the Fourteenth Amendment.
¶53 The Court does not address whether BNSF consented to jurisdiction in Montana, and I will reserve judgment on that issue as well. For unless the United States Supreme Court meant something other than what it said, I will get an opportunity to ultimately provide my thoughts on that argument in the future.
¶54 I respectfully dissent.

 See also Daimler, 134 S. Ct. at 763 (Sotomayor, J., concurring).

 In fact, the term dates back even before the passage of the United States Constitution to mean jurisdiction over the cause of action. See The Federalist No. 82, p 132 (E. Bourne ed. 1947, Book II) (A. Hamilton).

 In conducting research, I could not find a single court that has ever construed concurrent jurisdiction to mean anything other than jurisdiction over the subject matter.