Justice SOTOMAYOR, concurring in part and dissenting in part.
I concur in the Court's conclusion that the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq., does not confer personal jurisdiction over railroads on state courts. I also agree that the Montana Supreme Court erred when it concluded that the nature of the claim here-a FELA claim against a railroad-answers the question whether the Due Process Clause allows the exercise of personal jurisdiction over BNSF. But my agreement with the majority ends there. I continue to disagree with the path the Court struck in Daimler AG v. Bauman, 571 U.S. ----, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014), which limits general jurisdiction over a corporate defendant only to those States where it is " 'essentially at home,' " id., at ----, 134 S.Ct., at 761. And even if the Court insists on adhering to that standard, I dissent from its decision to apply it here in the first instance rather than remanding to the Montana Supreme Court for it to conduct what should be a fact-intensive analysis under the proper legal framework. Accordingly, I join Parts I and II of the Court's opinion, but dissent from Part III and the judgment.
The Court would do well to adhere more faithfully to the direction from International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), which instructed that general jurisdiction is proper when a corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Id ., at 318, 66 S.Ct. 154. Under International Shoe, in other words, courts were to ask whether the benefits a defendant attained in the forum State warranted the burdens associated with general personal jurisdiction. See id., at 317-318, 66 S.Ct. 154. The majority itself acknowledges that International Shoe should govern, describing the question as whether a defendant's affiliations with a State are sufficiently " 'continuous and systematic' " to warrant the exercise of general jurisdiction there. Ante, at 1558. If only its analysis today reflected that directive. Instead, the majority opinion goes on to reaffirm the restrictive "at home" test set out in Daimler -a test that, as I have explained, has no home in our precedents and creates serious inequities. See 571 U.S., at ---- - ----, 134 S.Ct., at 767-773 (SOTOMAYOR, J., concurring in judgment).
The majority's approach grants a jurisdictional windfall to large multistate or multinational corporations that operate across many jurisdictions. Under its reasoning, it is virtually inconceivable that such corporations will ever be subject to general jurisdiction in any location other than their principal places of business or of incorporation. Foreign businesses with principal places of business outside the United States may never be subject to general jurisdiction in this country even though they have continuous and systematic contacts within the United States. See id., at ---- - ----, 134 S.Ct., at 759-760. What was once a holistic, nuanced contacts analysis backed by considerations of fairness and reasonableness has now effectively been replaced by the rote identification of a corporation's principal place of business or place of incorporation.[1] The *1561 result? It is individual plaintiffs, harmed by the actions of a farflung foreign corporation, who will bear the brunt of the majority's approach and be forced to sue in distant jurisdictions with which they have no contacts or connection.
Moreover, the comparative contacts analysis invented in Daimler resurfaces here and proves all but dispositive. The majority makes much of the fact that BNSF's contacts in Montana are only a percentage of its contacts with other jurisdictions. Ante, at 1554, 1558 - 1559. But International Shoe, which the majority agrees is the springboard for our modern personal jurisdiction jurisprudence, ante, at 1557 - 1558, applied no comparative contacts test. There the Court analyzed whether the Delaware corporation had "by its activities in the State of Washington rendered itself amenable to proceedings" in the State. 326 U.S., at 311, 66 S.Ct. 154. The Court evaluated whether the corporation had offices in the forum State, made contracts there, delivered goods there, or employed salesmen there. See id., at 313, 66 S.Ct. 154. Despite acknowledging that the corporation maintained places of business in several States, ibid., the Court did not engage in a comparison between International Shoe's contacts within the State of Washington and the other States in which it operated.[2] The Court noted that the corporation employed 11 to 13 salesmen in Washington but did not query how that number compared to the number of salesmen in other States. Ibid. As well it should not have; the relative percentage of contacts is irrelevant. The focus should be on the quality and quantity of the defendant's contacts in the forum State.[3]
The majority does even Daimler itself a disservice, paying only lipservice to the question the Court purported to reserve there-the possibility of an "exceptional case" in which general jurisdiction would be proper in a forum State that is neither a corporate defendant's place of incorporation nor its principal place of business. See 571 U.S., at ----, n. 19, 134 S.Ct., at 761, n. 19. Its opinion here could be understood to limit that exception to the exact facts of Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). See ante, at 1558 - 1559. That reading is so narrow as to read the exception out of existence entirely; certainly a defendant with significant contacts *1562 with more than one State falls outside its ambit. And so it is inevitable under its own reasoning that the majority would conclude that BNSF's contacts with Montana are insufficient to justify the exercise of personal jurisdiction here. This result is perverse. Despite having reserved the possibility of an "exceptional case" in Daimler, the majority here has rejected that possibility out of hand.
Worse, the majority reaches its conclusion only by departing from the Court's normal practice.[4] Had it remanded to the Montana Supreme Court to reevaluate the due process question under the correct legal standard, that court could have examined whether this is such an "exceptional case." Instead, with its ruling today, the Court unnecessarily sends a signal to the lower courts that the exceptional-circumstances inquiry is all form, no substance.
I respectfully concur in part and dissent in part.

As many commentators have observed, lower courts adhered to the continuous-and-systematic standard for decades before Daimler, and its predecessor Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011), wrought the present sea change. See, e.g., Cornett & Hoffheimer, Good-Bye Significant Contacts: General Personal Jurisdiction after Daimler AG v. Bauman, 76 Ohio St. L.J. 101 (2015) ; Parry, Rethinking Personal Jurisdiction after Bauman and Walden, 19 Lewis & Clark L. Rev. 607 (2015) ; Doernberg, Resoling International Shoe, 2 Tex. A & M L. Rev. 247 (2014) ; Feder, Goodyear, "Home," and the Uncertain Future of Doing Business Jurisdiction, 63 S.C.L. Rev. 671 (2012).

The majority responds that the language from International Shoe informs only a specific jurisdiction case. Ante, at 1559, n. 4. But the majority's view of International Shoe is overly restrictive. The terms "specific jurisdiction" and "general jurisdiction" are nowhere to be found in that opinion. And I continue to believe, as I noted in Daimler, that there is no material difference between the "continuous and systematic" terminology International Shoe used for what we now call specific jurisdiction and the "continuous" and "substantial" terminology it used for what we now call general jurisdiction. See Daimler, 571 U.S., at ----, n. 6, 134 S.Ct., at 767, n. 6 (SOTOMAYOR, J., concurring in judgment).

Indeed, in neither Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), nor Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), did the Court engage in a comparative-contacts analysis.

The Montana Supreme Court reached this question only by wrongly assuming that 45 U.S.C. § 56 is a jurisdictional statute and that a defendant's unique status as a railroad company is dispositive of the jurisdictional question. A remand rather than an outright reversal is this Court's traditional practice where a lower court applies the incorrect legal standard; we have done it repeatedly just this Term. See, e.g., Bethune-Hill v. Virginia State Bd. of Elections, 580 U.S. ----, 137 S.Ct. 788, 197 L.Ed.2d 85 (2017) ; Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co., --- U.S. ----, ----, 137 S.Ct. 1312, 1316, --- L.Ed.2d ---- (2017) ; McLane Co. v. EEOC, --- U.S. ----, ----, 137 S.Ct. 1159, 197 L.Ed.2d 500 (2017) ; Moore v. Texas, ---U.S. ----, ----, 137 S.Ct. 1039, 1054, 197 L.Ed.2d 416 (2017).