[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17798
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-01499-MHC

LEONARD ROWE,
ROWE ENTERTAINMENT, INC.,
LEE KING,
LEE KING PRODUCTIONS, INC.,

Plaintiffs - Appellants,

versus

GARY, WILLIAMS, PARTENI, WATSON AND GARY, P.L.L.C.,
WILLIE E. GARY,
SEKOU M. GARY,
MARIA SPERANDO,
LORENZO WILLIAMS,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 31, 2018)

Before MARCUS, JILL PRYOR, and DUBINA, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Leonard Rowe, Rowe Entertainment, Inc., Lee King, and Lee King Productions, Inc. (collectively "Plaintiffs") appeal the district court's dismissal of their complaint for lack of personal jurisdiction over Defendants Gary, Williams, Parteni, Watson & Gary, P.L.L.C. (the "Gary Firm"), Willie E. Gary, Sekou M. Gary, Maria Sperando,[1] and Lorenzo Williams (collectively the "Gary Defendants").

Plaintiffs are two individuals, alleging Georgia citizenship, and two corporations. The complaint identifies Rowe Entertainment, Inc. as a Georgia corporation with its principal place of business in Georgia, while Lee King Productions, Inc. is a Mississippi corporation with its principal place of business in Mississippi. The Gary Firm is a Florida law firm with its principal place of business in Florida and whose members are all residents of Florida. The individually-named Defendants are also all identified as citizens of Florida.

## I.    BACKGROUND

This case comes before us with a complicated history:  It originated in the District Court for the Southern District of New York, in which the Gary

---

[1] Defendant Sperando represents herself *pro se* in this matter, as she no longer is connected to the Gary Firm.

Defendants represented Plaintiffs in a widely-publicized civil action for racial discrimination in the entertainment industry.  More than ten years after that case was dismissed,[2] upon the entry of summary judgment in favor of the entertainment industry defendants (who are not party to the instant action), Plaintiffs filed suit in the District Court for the Northern District of Georgia alleging legal malpractice and fraudulent misrepresentation by the Gary Defendants for, among other alleged wrongdoings, failing to obtain relevant e-mail evidence for the failed summary judgment response and for fraudulently inducing Plaintiffs to reject a settlement offer of $20 million.  In short, Plaintiffs seek to use the Georgia federal courts to obtain civil liability over Florida defendants for actions that relate exclusively to representation in a New York case.[3]

In the complaint, Plaintiffs allege only the Gary Defendants' citizenship to demonstrate complete diversity.  In response to Defendants' motion to dismiss, Plaintiff Rowe submitted a declaration that detailed the contacts various Defendants had with Georgia to establish personal jurisdiction.  These contacts

---

[2] *See Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, No. 98 Civ. 8272 (RPP), 2005 WL 22833 (S.D. N.Y. Jan. 5, 2005), *aff'd* 167 F. App'x 227 (2d Cir. 2005).

[3] This action is not Plaintiffs' first attempt to do so. On March 13, 2015, Plaintiffs filed an action in the Northern District of Georgia alleging federal and state RICO claims in addition to the malpractice and fraud claims.  The district court dismissed those federal claims and declined to exercise supplemental jurisdiction over the remaining state claims for malpractice and fraud. *See Rowe v. Gary, Williams, Parenti, Watson & Gary, P.L.L.C.*, No. 1:15–CV–770–AT, 2016 WL 3390493 (N.D. Ga. Mar. 31, 2016) ("*Rowe I*").  Plaintiffs filed the instant action in the same court on May 9, 2016. [R. 1].

include:  (1) Plaintiff Rowe's initial meeting with Willie Gary, which occurred in the Fulton County Courthouse in Atlanta, (2) approximately three meetings that took place in Atlanta, including one major case strategy meeting, (3) phone calls and emails between Plaintiff Rowe, who was located in Atlanta, and Gary Defendants to discuss the progress of the New York action, and (4) one deposition conducted by Defendant Sperando in Atlanta for the New York action.  Upon the Gary Defendants' motion to dismiss, or in the alternative to transfer venue to the Southern District of New York, the district court found Plaintiffs did not present sufficient evidence to establish personal jurisdiction and dismissed the action.  We review *de novo* the decision of the district court to dismiss a complaint for lack of personal jurisdiction. *Carmouche v. Tamborlee Management, Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015).

## II.    ANALYSIS

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists:  the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  The district court found, and we do not disagree, that the Georgia long-arm statute, O.C.G.A. § 9–10–91, permitted the exercise of jurisdiction over the Gary Defendants.  *See*

*generally Diamond Crystal Brands, Inc. v. Food Movers Internat'l, Inc.*, 593 F.3d

1249, 1264–66 (11th Cir. 2010).  The question before this Court, then, is whether

the exercise of jurisdiction violates the Due Process Clause.  In alleging personal

jurisdiction exists, Plaintiffs contend the district court can exert jurisdiction on the

basis of either general or specific jurisdiction.  We will analyze each in turn.

## A. General Jurisdiction

The Supreme Court recently reviewed the requirements for exercising

general jurisdiction and, as should be the result in this case, found the basis for

asserting jurisdiction to be lacking:

> *Goodyear* and *Daimler* clarified that "[a] court may assert
> general jurisdiction over foreign (sister-state or foreign-country)
> corporations to hear any and all claims against them when their
> affiliations with the State are so 'continuous and systematic' as
> to render them essentially at home in the forum State."
> *Daimler*, 571 U.S. at ___, 134 S.Ct. at 754 (quoting *Goodyear*,
> 564 U.S. at 919, 131 S.Ct. at 2846).  The "paradigm" forums in
> which a corporate defendant is "at home," we explained, are the
> corporation's place of incorporation and its principal place of
> business.  *Daimler*, 571 U.S. at ___, 134 S.Ct. at 760;
> *Goodyear*, 564 U.S. at 924, 131 S.Ct. at 2846.  The exercise of
> general jurisdiction is not limited to these forums; in an
> "exceptional case," a corporate defendant's operations in
> another forum "may by so substantial and of such a nature as to
> render the corporation at home in that State."  *Daimler*, 571
> U.S. at ___, 134 S. Ct at 761 n. 19.  We suggested that *Perkins
> v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S. Ct. 413, 96
> L.Ed. 485 (1952), exemplified such a case.  *Daimler*, 571 U.S.
> at ____ n. 19, 134 S.Ct. at 761 n. 19.  In *Perkins*, war had
> forced the defendant corporation's owner to temporarily
> relocate the enterprise from the Philippines to Ohio.  342 U.S.
> at 447–48, 72 S.Ct. at 413.  Because Ohio then became "the

5

center of the corporation's wartime activities," *Daimler*, 571 U.S. at \_\_\_\_ n. 8, 134 S. Ct. at 756 n. 8, suit was proper there, *Perkins*, 342 U.S. at 448, 72 S. Ct at 413. [. . .] In short, the business BNSF does in Montana is sufficient to subject the railroad to specific personal jurisdiction in that State on claims related to the business it does in Montana. But in-state business, we clarified in *Daimler* and *Goodyear*, does not suffice to permit the assertion of general jurisdiction over claims like Nelson's and Tyrrell's that are unrelated to any activity occurring in Montana.

*BNSF Ry. Co. v. Tyrrell*, \_\_\_ U.S. \_\_\_, 137 S. Ct. 1549, 1558–59 (2017) (holding that because BNSF was "not incorporated in Montana and does not maintain its principal place of business there" or was otherwise "so heavily engaged in activity in Montana 'as to render [it] essentially at home' in that State," general jurisdiction was improper); *see also Carmouche*, 789 F.3d at 1204–05 (holding the district court did not have general personal jurisdiction).

Because the allegations in the complaint do not demonstrate any facts that indicate the Gary Defendants are "essentially at home" in the State of Georgia, general personal jurisdiction is improper. Thus, we agree with the district court's finding that it lacked general jurisdiction.

## B. Specific Jurisdiction

"In specific jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities

within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 474–75, 104 S. Ct. 1868, 1872 (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)) (other citations omitted).  Plaintiff must prove the first two prongs and, if successful, the defendant must then make a "compelling case" that exercising jurisdiction would violate traditional notions of fair play and substantial justice.  *Id.* (citing *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267).

"In specific jurisdiction cases, the 'fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267 (quoting *Burger King Corp.*, 471 U.S. at 471–72, 105 S. Ct. at 2182).  As we have said, "the defendant must have 'purposefully availed' itself of the privilege of conducting activities— that is purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." *Id.*

 1.  *Minimum Contacts Analysis*

In entering this analysis, we are mindful that we must focus on the Gary Defendants' conduct to determine whether they "deliberately engaged in significant activities within [Georgia] or created continuing obligations with residents of that forum." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1268.  Stated otherwise, the contacts with Georgia cannot merely be "random," "fortuitous," or "attenuated." *See id.* (quoting *Burger King Corp.*, 471 U.S. at 475, 105 S. Ct. at 2183).  Further, an out-of-state defendant's merely entering into a contract—such as one for legal representation—with a forum resident is insufficient to pass the minimum contacts test. *Id.*; *see also Newsome v. Gallacher*, 722 F.3d 1257, 1279–81 (10th Cir. 2013) (agreeing "with the majority that an out-of-state attorney working from out-of-state on an out-of-state matter does not purposefully avail himself of the client's home forum's laws and privileges . . . .").[4]

In the case at bar, the events and contacts giving rise to the litigation occurred, on the whole, in either New York or Florida.  Plaintiffs point to few actual contacts that occurred in Georgia—mainly to the one litigation preparation meeting in December 2002, the taking of one deposition for the New York action, and the initial contact between Plaintiffs and the Gary Firm.  As to the initial meeting, we find that it was "fortuitous" that Willie Gary happened to be in Atlanta

---

[4] The *Newsome* case from our sister-circuit does an excellent job analyzing the majority and minority cases that answer whether an out-of-state attorney's representation of a client is, in itself, enough to grant federal courts personal jurisdiction over the attorney.  At this point in time, we see no reason to depart from the Tenth Circuit's well-reasoned analysis of this issue.

working on an unrelated case at the time Rowe initiated contact with the Gary Firm. Further, the Gary Firm engaged in only one official litigation strategy meeting in Atlanta[5] with Plaintiffs over the course of a multi-year representation in a case before another district court. While it might have been a matter of convenience, this one meeting is an attenuated contact at best. Finally, Plaintiffs argue the Gary Defendants regularly communicated with them via phone, e-mail, and even fax about the New York action, including the contested discovery e-mails and the offer of settlement. While Rowe might have been in Georgia for some of the discussions about the ongoing litigation, he clearly admits that he also spoke to the Gary Defendants about his case from New York and in the Gary Firm office in Florida. *Compare with Diamond Crystal Brands, Inc.*, 593 F.3d at 1269 (finding specific jurisdiction when the non-forum defendant "purposefully engag[ed] in fourteen such transactions in just six months," thus establishing "a substantial and ongoing relationship with a Georgia manufacturer"). Unlike the ongoing contacts that occurred in Georgia in *Diamond Crystal Brands, Inc.*, the contacts in this case demonstrate random or attenuated contacts within the State directly, all of which tie to ongoing litigation occurring in an out-of-state forum. For these reasons, we conclude that subjecting the Gary Defendants to jurisdiction in Georgia would

---

[5] Plaintiffs claim they met with Gary Defendants on two other occasions, but Rowe's declaration reveals that these two other meetings took place on the Gary Firm's private plane on the tarmac at the Atlanta airport en route to other meetings. [R. 26 at p. 21].

violate Due Process, and we thus affirm the district court's dismissal of the action for lack of personal jurisdiction.

## 2. *Fair Play and Substantial Justice*

Although unnecessary, we also conclude that the district court correctly ruled that exercising personal jurisdiction in this case would violate traditional notions of fair play and substantial justice. "In this analysis, we look to the burden of the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the shared interest of the several states in furthering fundamental substantive social policies." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1274 (quotation marks and citation omitted). The district court correctly pointed out that Georgia has a limited interest in adjudicating this dispute because the lion's share of the conduct alleged occurred outside of Georgia; in fact, New York would have a significantly stronger interest in adjudicating a dispute regarding malpractice and fraud that occurred in its courts. *See Touchcom, Inc. v. Bereskin & Parr*, 547 F.3d 1403, 1417–18 (Fed. Cir. 2009) (finding that the U.S. courts generally have an interest in adjudicating disputes for claims of malpractice that occur before federal agencies). Overall, the factors supporting jurisdiction are few in this case, as Georgia has limited interest

and the burden would be excessive on the Gary Defendants.[6]  We therefore affirm the district court's finding that exercising jurisdiction over the Gary Defendants would violate the Due Process Clause.

For the foregoing reasons, we affirm the judgment of dismissal.

**AFFIRMED**.[7]

---

[6] Plaintiffs argue Georgia has a strong interest in this case—more so than New York—because the statute of limitations has run in New York.  The Court does not find this argument persuasive when New York has an equal interest to Georgia's in protecting clients from fraud that occurred in its courts.

[7] We do not reach the issue of transfer Plaintiffs raise because they waived the argument below by actively opposing transfer to the Southern District of New York [*see* R. 28 at pp. 19–23].  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered[.]") (internal marks and citation omitted).

11